

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,665

### EX PARTE ADRIAN CHAVEZ, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM  HARRIS COUNTY

ALCALA, J., delivered the opinion of the Court in which MEYERS, WOMACK, JOHNSON, HERVEY, and COCHRAN, JJ., joined. WOMACK, J., filed a concurring opinion in which HERVEY, J., joined. KELLER, P.J., filed a dissenting opinion. PRICE, J., filed a dissenting opinion in which KEASLER, J., joined.

### O P I N I O N

Applicant, Adrian Chavez, seeks relief from his fifty-five-year sentence for aggravated robbery. This is applicant's first subsequent application for a writ of habeas corpus. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4. Applicant claims that a new legal basis that was previously unavailable when he filed his first habeas application entitles him to consideration of, and relief on, his due-process false-testimony claim. *See id.* § 4(a)(1). Although we find that applicant is not procedurally barred from raising his claim, we

conclude that he has failed to establish a due-process violation by the State's unknowing use of false testimony at his trial. We deny relief.

## I.  Background

### A.  Facts

In the early hours of July 1, 1997, a group of four or five men unlawfully entered a house by kicking in the door. The intruders wore bandanas over their faces, and at least two of the men carried guns. During the invasion, one of the armed men fatally shot Alex Parisi, an occupant of the home. The intruders stole drugs and money and fled the scene. Two of Parisi's roommates, Vernon Cameron and Christopher Lewis, were home that evening and witnessed the shooting. Both men identified the shooter as applicant. Cameron told police that the shooter pulled down his mask immediately after he opened fire on Parisi and that he recognized him as applicant. Lewis, who was also in the bedroom where Parisi was shot, said that he recognized applicant's voice and build. Cameron testified that he had met applicant on "many occasions," and Lewis testified that he had known applicant for years.

Applicant was charged with capital murder,[1] and the State introduced at trial, among other evidence linking applicant to the offense, Cameron's and Lewis's testimony. Applicant

---

[1]    Applicant was also charged with the lesser-included offenses of murder and aggravated robbery.

testified that he was at home asleep at the time of the offense. The jury found applicant guilty of the lesser-included offense of aggravated robbery.[2]

During the punishment phase, the State introduced evidence casting applicant in an unfavorable light, including evidence of his role as the primary planner of the offense; testimony regarding his lack of remorse following the offense; his false testimony in which he denied participation in the offense; and a prior history of violent behavior and crime, including felony offenses he committed while on bond for the capital-murder charge in this case.

The following morning, after the jury had retired to deliberate, applicant admitted to his counsel, for the first time, that he had participated in the offense, but only as the driver of the getaway vehicle. Defense counsel arranged for applicant to meet with the prosecutor to provide the names of the other individuals who were involved in the offense "to see if it would in any way influence the ultimate disposition in terms of sentencing in this matter." During this meeting, however, the jury returned with a verdict assessing applicant's punishment at fifty-five years' confinement.[3] The trial court denied his motion for new trial, and his conviction was affirmed on direct appeal. *See Chavez v. State*, No. 14-98-00696-CR,

---

[2]      The trial court instructed the jury on the law of parties under Texas Penal Code section 7.02(a)(2), permitting the jurors to convict applicant of aggravated robbery if they believed he "solicit[ed], encourage[d], direct[ed], aid[ed], or attempt[ed] to aid" in the commission of the offense. *See* TEX. PEN. CODE § 7.02(a)(2).

[3]      The statutory punishment range for aggravated robbery is 5 to 99 years' confinement. *See* TEX. PEN. CODE §§ 12.32 & 29.03(b).

2000 Tex. App. LEXIS 3055 (Tex. App.—Houston [14th Dist.] May 11, 2000, pet. ref'd) (not designated for publication).

After applicant was convicted, the State's attorneys received what they considered to be credible information from two witnesses, previously unknown to the State, that two other men had admitted to perpetrating the offense, one of whom admitted to having shot Parisi. One of those men also stated that applicant had devised and coordinated the offense, and the other man stated that applicant remained in the getaway vehicle during the course of the offense. Both of those men pleaded guilty to, and were convicted of, aggravated robbery with a deadly weapon for this offense. Because of this post-trial discovered evidence showing that applicant was not in the house during the offense, applicant filed a writ of habeas corpus contending that the roommates' testimony identifying him as the shooter was false.

**B. Applicant's First Application for Writ of Habeas Corpus**

Applicant filed his first application for a writ of habeas corpus challenging the validity of his conviction and sentence in light of the newly discovered evidence of innocence, namely, that someone other than applicant was the shooter.[4] *See Ex parte Chavez*, 213 S.W.3d 320, 321 (Tex. Crim. App. 2006) ("*Chavez I*"). The convicting court recommended a new punishment proceeding only, concluding that the "totality of the circumstances"

_____

[4] Applicant also raised a Due Process claim based on either the knowing or "good faith" use of false testimony to obtain a conviction, but we did not file and set that claim and summarily denied it. *See Ex parte Chavez*, 213 S.W.3d 320, 326 n.30 (Tex. Crim. App. 2006) ("*Chavez I*").

undermined its confidence in the fifty-five-year sentence. *Id*. at 322. We, however, held that applicant was not entitled to relief under the actual-innocence framework or any other due-process principle then available. *Id*. at 321.

This Court analyzed applicant's claim using the rubric of actual innocence. *Chavez I*, 213 S.W.3d at 322. We acknowledged, however, that it was "odd to speak in terms of being 'actually innocent' of a particular punishment" that is within the statutorily provided range of punishment for an offense and considered whether applicant would be entitled to a new punishment hearing based on "any other principle of due process." *Id*. at 323. In discussing the applicability of any other due-process principle, this Court analyzed applicant's issue in the context of the State's failure to disclose "material exculpatory evidence" and determined that the record did not "reveal any act or omission on the part of the State or any of its agents that caused the applicant's sentencing jury to be misinformed about the true nature of his involvement in the offense." *Id*. at 324. We also observed that it was applicant's fault that the jury was misinformed because "he knew the true extent of his involvement in the offense" and "affirmatively misled his own counsel and chose to testify, apparently falsely, to an alibi in an attempt to escape criminal liability altogether." *Id*. at 325.

After considering various factors—including the State's and applicant's roles in supplying the misinformation, the witnesses' sworn statements that they would provide the same testimony in a new trial, and the fact of applicant's acquittal from capital murder and the lesser-included offense of murder—we concluded that applicant had failed to

"unquestionably establish" that the jury was materially misinformed as to his involvement in the offense and denied relief. *Id*. at 326.

### C. Applicant's Second Application for Writ of Habeas Corpus

Applicant has now filed a subsequent application, in which he claims that a new legal basis warrants further review of his false-testimony claim. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(1). He cites *Ex parte Chabot*, in which we explicitly held, for the first time, that admission of false testimony could violate an applicant's due-process rights, even when the State was unaware at the time of trial that the testimony was false. 300 S.W.3d 768, 772 (Tex. Crim. App. 2009).[5] He argues that, now that a claim of unknowing use of false testimony is cognizable on habeas, the admission of Cameron's and Lewis's false testimony entitles him to a new trial on punishment, despite that the State neither knew nor should have known that their testimony was false. The State responds that, assuming applicant's claim meets the new-legal-basis requirement and that the testimony is false, applicant fails to establish harm given that he was acquitted of the murder charges, citing our analysis in *Chavez I*. *See Chavez I*, 213 S.W.3d at 325-26.

In its findings of fact and conclusions of law, the trial court found that the new evidence "revealed that the applicant was not one of the shooters although he was an active participant in the planning and execution of the instant offense." It did not decide whether

---

[5]     *See also Ex parte Napper*, 322 S.W.3d 202, 242 (Tex. Crim. App. 2010) ("We have recently held that due process may be violated by a prosecutor's unknowing use of perjured testimony.") (citing *Ex parte Chabot,* 300 S.W.3d 768, 771-72 (Tex. Crim. App. 2009)).

*Chabot* constituted a new legal basis under Article 11.07, Section 4(a)(1), but found that "even if the applicant establishes that the legal basis for his habeas claim was not available when" he filed his first habeas application, "the evidence does not establish that witnesses Cameron and Lewis intended to provide false testimony or that they thought their trial testimony was inaccurate." It further found that applicant failed "to demonstrate harm in light of the applicant's admission of involvement in the instant offense; the court's inclusion of a parties charge; and the jury's finding that the applicant was guilty of the lesser offense of aggravated robbery." It concluded, therefore, that applicant "has not established a violation of his due process rights based on the State's unknowing presentation of alleged perjured testimony" and recommended denying relief.

## II. Jurisdiction Over Subsequent Habeas Application with New Legal Basis

### A. Subsequent-Application Statutory Procedural Requirements

Under Texas law, this Court may not consider the merits of a subsequent application for a writ of habeas corpus unless the application satisfies one of two statutory exceptions. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4. One such exception is applied when an application

> contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application.

*Id.* § 4(a)(1).  In his initial application, applicant argued that "[e]ven if the State presented the false testimony in good faith, the due process/due course of law provisions of the United States and Texas Constitutions were violated."  However, we did not address that argument and filed and set only his actual-innocence claim.  Although we have never addressed his due-process false-testimony argument, the pertinent question in determining whether we may review applicant's subsequent application is whether *Chabot* constitutes a new legal basis that was unavailable at the time he filed his initial application. *See id.*

**B.    *Ex parte Chabot* Explicitly Recognized Due-Process Claim of Unknowing Use of False Testimony**

In *Chabot*, the State presented testimony of an accomplice witness who claimed that he was in another room when the applicant sexually assaulted and murdered the victim. *Chabot*, 300 S.W.3d at 770. Postconviction DNA evidence excluded Chabot and revealed that the accomplice witness had, in fact, perpetrated the offense. *Id.*  However, there was no evidence that the State knew that the testimony was false when the State introduced it at trial. *Id.* at 771. We observed that, in cases involving the State's knowing use of false testimony in violation of due process, an "'applicant has the burden to prove by a preponderance of the evidence that the error contributed to his conviction or punishment.'" *Id.* (quoting *Ex parte Fierro*, 934 S.W.2d 370, 374 (Tex. Crim. App. 1996)). Although *Chabot* involved unknowing, rather than knowing, use of false testimony, we found "no reason for subjecting the two types of errors to different standards of harm." *Id.*  Because the false testimony of the accomplice witness provided the only direct evidence that Chabot sexually assaulted and

killed the victim, we concluded held that Chabot's "due-process rights were violated, notwithstanding the absence of the State's knowledge of the perjured testimony at the time of trial." *Id*. at 772.

*Chabot* was the first case in which we explicitly recognized an unknowing-use due-process claim; therefore, that legal basis was unavailable at the time applicant filed his previous application.[6] *See* TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(1).

**C.  Unknowing Use of False Testimony Not a Legal Basis for Relief in *Chavez I***

In his first application, applicant claimed that new evidence shows that he is "actually innocent of entering the house and shooting the deceased" and, therefore, is entitled to either a new trial or new punishment hearing.  In *Chavez I,* we observed that in order to obtain relief on a bare actual-innocence claim, applicant

> must satisfy an "extraordinarily high" standard of proof. He must "unquestionably establish" his innocence; that is to say, he must show by clear and convincing evidence that, presented with both the inculpatory evidence at trial and the newly discovered or available evidence of innocence, no reasonable juror would have convicted him.

---

[6]     We do not reach harm in this case. We note, however, that

> there is an analytical difference that our opinion continues to respect: materiality is a component of the due process violation, and hence a component of the error, while harm is a separate inquiry. Viewed from that perspective, the *materiality* standard for perjured testimony remains what it has always been–the *Chapman* ["possibility"] test.  But the *harm* standard on collateral review is the *Dutchover* ["probability"] test.

*Ex parte Fierro*, 934 S.W.2d 370, 377 (Tex. Crim. App. 1996) (citing *Chapman v. California*, 386 U.S. 18 (U.S. 1967); *Ex parte Dutchover*, 779 S.W.2d 76 (Tex. Crim. App. 1989)).

*Chavez I*, 213 S.W.3d at 322 (citing *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996)). We also considered whether any other due-process principle rendered the punishment proceeding "intolerably unfair" so to require a new one, "[b]orrowing . . . from the due-process vernacular in the context of the suppression of exculpatory punishment evidence." *Id*. at 324-25. Namely, we examined whether "the sentencer's normative judgment" was "affirmatively misinformed" by the admission of the false testimony. *Id*. at 324.

We observed that, in the context of the State's failure to disclose material exculpatory evidence, "[m]alfeasance . . . on the part of any member of the prosecution 'team' may be attributable to the State for due-process purposes," and noted that the misinformation in this case was not attributable to the State. *Id*. at 324-25. We also observed that, in that same context, "we have held that there is no due process violation under circumstances in which the defendant himself already knew about the exculpatory facts." We noted that had applicant disclosed his actual involvement sooner than he did, "counsel could have attempted to investigate the circumstances that corroborated the applicant's account" and "might have attempted to broker a plea bargain" to obtain a lesser sentence. *Id*. at 325.  Because he did not and instead presented a false alibi, to the extent that the misinformation adversely affected his punishment, he was at fault. *Id*. We, therefore, concluded that applicant did not suffer an unfair punishment proceeding. *Id*.

We further decided that "new evidence that the applicant was not the actual shooter" was not "material" in this case. *Id*.  Once more using language applicable to claims involving

failure to disclose material exculpatory evidence, we determined that applicant had not demonstrated "a reasonable probability that its disclosure would have changed the jury's assessment of punishment." *Id*. at 325-26. We concluded that, because the jury acquitted applicant of the murder charges, which "suggests that the jury did not believe he was the shooter in any event," there was not a reasonable probability "that the jury would have assessed anything other than the fifty-five-year sentence that it actually did assess." *Id*. at 326. We also noted that Cameron and Lewis had both submitted sworn statements that they would testify again to the same effect. *Id*. We held that, under these circumstances, applicant could not show "by clear and convincing evidence that *no* reasonable juror would find he was the shooter in a retrial." *Id*.

**D. Unknowing Use of False Testimony is New Legal Basis in Present Case**

The error standard we applied to applicant's claim in *Chavez I* was more difficult for an applicant to establish than the present standard now applicable to due-process claims of unknowing use of false testimony. *See Chabot*, 300 S.W.3d at 772; *Ex parte Ghahremani*, 332 S.W.3d 470, 478 (Tex. Crim. App. 2011). The present standard for materiality of false testimony is whether there is a "reasonable likelihood that the false testimony affected the applicant's" conviction or sentence. *Id*. This standard is "more likely to result in a finding of error" than the standard that requires the applicant to show a "reasonable probability" that the error "affected the outcome." *Id*. (discussing standard applied to *Brady*[7] claims of

---

[7]     *Brady v. Maryland*, 373 U.S. 83, 87 (1963)

Adrian Chavez - 11

suppressed evidence). *Chavez I* analyzed whether there was a due-process violation by "borrow[ing] once again from the due-process vernacular in the context of the suppression of exculpatory punishment evidence" and determined that the record did not show "a reasonable probability that its disclosure would have changed the jury's assessment of punishment." *Chavez I*, 213 S.W.3d at 325-26. Because an applicant can more easily establish materiality after *Chabot*, applicant's subsequent application presents a new, previously unavailable legal basis. *See* TEX. CODE CRIM. PROC. art. 11.071, § 4(a)(1).

Furthermore, our opinion in *Chavez I* took into account factors not applicable to post-*Chabot* analysis of those claims. First, our consideration in *Chavez I* that the misinformation was in no way attributable to prosecutorial misconduct is no longer relevant to applicant's claim in light of *Chabot*, in which we found "no reason" for affording disparate treatment to claims in which the State lacked knowledge of testimony's falsity at the time of trial. *Chabot*, 300 S.W.3d at 771. Second, in *Chavez I*, we weighed applicant's complicity in the admission of the false testimony against a finding of error, observing that, in the failure-to-disclose context, there is no due-process violation when "the defendant himself already knew about the exculpatory facts." *Chavez I*, 213 S.W.3d at 325 (citing, *e.g.*, *Harris v. State*, 453 S.W.2d 838, 839 (Tex. Crim. App. 1970) ("If such [exculpatory] facts were known to the appellant or his trial counsel, he cannot now seek relief on the basis of the State's failure to disclose the same facts.")). However, nothing in our due-process false-testimony

jurisprudence imposes upon a defendant a duty to incriminate himself in order to potentially avoid erroneous admission of false testimony as a prerequisite to relief.

Because this Court now recognizes a due-process claim of unknowing use of false testimony, and because the applicable standards are considerably more favorable than those we applied to applicant's initial false-testimony claim, applicant is entitled to review of his subsequent application. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(1).

### III.  Merits of Applicant's False-Testimony Claim

### A.  Standard of Review

On postconviction review of habeas corpus applications, the convicting court is the "original factfinder," and this Court is the ultimate factfinder. *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008). We generally defer to and accept the convicting court's findings of fact and conclusions of law when they are supported by the record. *Id.*  However, "[w]hen our independent review of the record reveals that the trial judge's findings and conclusions are not supported by the record, we may exercise our authority to make contrary or alternative findings and conclusions." *Id*.

### B.  Analysis of Testimony by Cameron and Lewis

*1.  Was Cameron's and Lewis's testimony false?*

"The Due Process Cause of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly." *Ex parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011) (citing U.S.

CONST. amend. XIV). Testimony need not be perjured to constitute a due-process violation; rather, "it is sufficient that the testimony was 'false.'"*Id*. The question is whether the testimony, taken as a whole, gives the jury a false impression. *See Ghahremani*, 332 S.W.3d at 477; *Alcorta v. Texas*, 355 U.S. 28, 31 (1957).

In rendering its findings, conclusions, and recommendation, the trial court focused on whether the testimony was perjured. It concluded that, because the evidence did not show that Cameron and Lewis "intended to provide false testimony or that they thought their trial testimony was inaccurate," applicant had failed to establish a due-process violation "based on the State's unknowing presentation of alleged perjured testimony." These findings, however, misapply the standard for false testimony because a witness's intent in providing false or inaccurate testimony and the State's intent in introducing that testimony are not relevant to false-testimony due-process error analysis. *See Robbins*, 360 S.W.3d at 459.

*Chavez I* focused on evidence that the roommates would testify again to the same facts. But this consideration is also no longer relevant and does not preclude a finding of error for due-process purposes. *See also Estrada v. State*, 313 S.W.3d 274, 287 (Tex. Crim. App. 2010) (error where witness unintentionally provided "incorrect testimony"); *Townsend v. Burke*, 334 U.S. 736, 740-41 (1948) (sentence based on information that is "materially untrue . . . whether caused by carelessness or design, is inconsistent with due process of law").

The record does show that the testimony, taken as a whole, gave the jury a false impression. *See Ghahremani*, 332 S.W.3d at 477; *Alcorta*, 355 U.S. at 31. In this case, it is undisputed that Cameron's and Lewis's unequivocal testimony that applicant was the shooter was false. This was demonstrated by the confession of the actual shooter, which was ultimately confirmed by the subsequent guilty plea and conviction of that individual. We also note that applicant described his involvement in the offense to his counsel before the culmination of the trial for this offense. Both the prosecution team and the trial courts (in the initial and subsequent habeas proceedings) have concluded that applicant was not the shooter and that Cameron's and Lewis's trial testimony to that effect was "incorrect." Applicant, therefore, satisfies the "falseness" prong of a false-testimony due-process claim.

*2. Was the false testimony material?*

To constitute a due-process violation, the record must show that the testimony was material, namely, that there is "a reasonable likelihood" that the false testimony affected the judgment of the jury. *See Ghahremani*, 332 S.W.3d at 478. In *Ghahremani*, the State introduced misleading testimony from the victims' father that "amplified the impact that the applicant's actions had on" the victims. *Id*. at 480. Observing that the applicant's sentences were at the high end of the applicable punishment range, we held that there was "a reasonable likelihood that the false testimony resulted in a harsher punishment" in that case. *Id*. In *Chabot*, we found that the false accomplice-witness testimony was also material because it provided the only direct evidence supporting the conviction. *See Chabot*, 300

S.W.3d at 772.

Here, applicant contends that the testimony was material, arguing that the jury would have assessed a lesser punishment had it not been misled by Cameron's and Lewis's false testimony to erroneously believe that applicant was in the house at the time of the shooting. We conclude that examination of the entire record does not reveal a reasonable likelihood that the jury was affected by the false testimony in assessing applicant's punishment. We first observe, as we did in *Chavez I*, that the jury's acquittal of applicant of the murder charges reveals that the jury disbelieved the witnesses' testimony that applicant was the triggerman. *Chavez I*, 213 S.W.3d at 325-26. Specifically, Cameron and Lewis testified that they observed only two of the intruders actually inside the home, both of whom were armed, but only one of whom met applicant's description. Therefore, if the jurors disbelieved Cameron's and Lewis's testimony that applicant was the assailant who shot Parisi, it is difficult to comprehend how they could have been otherwise misled by the witnesses' testimony as to the level or nature of applicant's involvement.

Furthermore, defense counsel impeached Cameron with prior inconsistent statements he had made, including having initially informed police that he "couldn't see who [the shooter] was" because he "had a mask on." There was also testimony that Cameron identified applicant only after discussing the offense with other witnesses and after an investigating officer had suggested applicant's name to him. This substantially weakened Cameron's testimony, and he was the sole witness who claimed to have seen applicant's face

Adrian Chavez - 16

during the course of the offense.

We also observe that the record contains substantial incriminating circumstantial evidence that further supports our confidence in the fifty-five-year sentence. For example, James Hitchcock, applicant's neighbor, testified that, a few weeks before the offense, applicant told him that "he wanted to try to get in good with Alex [Parisi] and them" so that "if they did a kick-door[8] on him, they'd know where everything was." He further testified that, the day after the offense, he went to applicant's home and saw a distinctive-looking gun resembling one Parisi had owned. When he told applicant that Parisi had been killed, applicant said, "I don't care . . . I'm trying to get some sleep." Furthermore, Lewis testified, and applicant confirmed, that applicant went to Parisi's home a few hours before the offense to buy drugs, and Lewis informed him that they had just received a large shipment of drugs that day. Lewis said that applicant was "looking around" the house during the transaction. Diann Hastings, who was at the home that evening, testified that four or five masked men entered the home, two of whom were armed. She and Chelsea Johnson, also at the house that evening, testified that as they fled, a man driving a truck, whom they believed was with the intruders, followed them as they sought refuge in a neighbor's house. Given this testimony, we do not find that the record reveals a reasonable likelihood that the jury would have assessed a different punishment even if they had believed applicant had entered the home

---

[8]     The record reveals that a "kick-door" is slang for a home-invasion robbery.

rather than merely remained in the getaway truck.[9]

Finally, the inculpatory evidence introduced at punishment revealed applicant's history of violent criminal behavior. The jury heard evidence that applicant was regularly engaged in dealing and using drugs, had dropped out of school, and had been convicted on an unlawful-weapons charge. Even more damning was detailed evidence that, while on bond awaiting trial for capital murder, applicant was charged with forgery and possession of cocaine. The jury was also aware, and the State emphasized in its closing argument, that applicant had lied on the witness stand by denying any involvement in the offense, which suggested that he lacked remorse and was interested only in avoiding punishment, despite his key role in a crime that directly resulted in someone's death. It was only after he had heard the weight of the State's punishment evidence that he attempted to negotiate with the State in hopes of obtaining a reduced sentence.

In light of the entire record before us, we find that the evidence fails to show a reasonable likelihood that the false testimony affected applicant's sentence. *See Ghahremani*, 332 S.W.3d at 481. Because we conclude that applicant has failed to establish a due-process violation, we need not decide whether applicant has shown, by a preponderance of the evidence, that the error contributed to his punishment. *See Fierro*, 934 S.W.2d at 377;

---

[9] The record also contains the testimony of Jesse Arispe, a friend of applicant, who testified that applicant confessed to Arispe his role in the offense. Applicant successfully challenged this testimony on direct appeal. *See Chavez v. State*, No. 14-98-00696-CR, 2000 Tex. App. LEXIS 3055 (Tex. App.—Houston [14th Dist.] May 11, 2000) (not designated for publication). We do not review the propriety of court of appeals's holding, but find that, even absent Arispe's testimony, the record does not support a finding that the false testimony was material.

*Chabot*, 300 S.W.3d at 771; *Ghahremani*, 332 S.W.3d at 481. His sole issue is overruled.

## IV. Conclusion

Because applicant has established that there is a new, previously unavailable legal basis for the relief he seeks, we have considered the merits of this subsequent application. Applicant has failed, however, to establish a due-process violation by the unknowing use of false testimony. We, therefore, deny relief.

Delivered: May 23, 2012

Publish