**Opinion issued November 8, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00354-CR

————————————

**BRYAN MATTHEW OLIVAREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th Judicial District Court**
**Harris County, Texas**
**Trial Court Case No. 1203764**

## MEMORANDUM OPINION

Appellant Bryan Matthew Olivarez pleaded guilty, without an agreed recommendation as to punishment, to the first-degree felony offense of attempted capital murder of a peace officer with a deadly weapon.  *See* TEX. PENAL CODE

ANN. § 15.01 (West 2011) (attempt); *id.* § 19.03(a)(1) (capital murder). The trial court sentenced him to 45 years in prison. In his sole issue, Olivarez argues that a law enforcement officer's allegedly false testimony violated his due process right to a fair trial and was fundamental error. We affirm the conviction of the trial court.

## Background

On February 15, 2009, Harris County Constable Deputy H. Menz stopped Olivarez for driving his truck in reverse at a high speed. Menz approached the truck, but Olivarez fled to his mobile home. Menz pursued, and when he arrived at the mobile home, Olivarez opened fire with a handgun. In response, Deputy Menz called for backup and returned fire. Approximately ten minutes later, other police officers arrived and arrested Olivarez. After his arrest, Olivarez berated the police officers, uttering profane personal remarks and saying that he "had every right" to shoot at Menz because he came to his house.

Olivarez was charged with attempted capital murder of Menz, and he pleaded guilty to the offense without an agreed recommendation on punishment. The court ordered that a pre-sentence investigation be conducted. At the punishment hearing, Menz testified about the crime and how it had personally affected him. In addition to this testimony, the State offered into evidence a video

2

recording from Menz's patrol car depicting the events and Olivarez's statements on the night he was arrested.

On direct examination by the State, Menz testified about where the bullets fired by Olivarez went:

> STATE: Do you know where the shots that the defendant fired at you ended up at that scene?
>
> MENZ: Yes.
>
> STATE: Where did they end up?
>
> MENZ: One went to—equivalent of being right by my head through a fence behind me; two of them were found right by one of my—where my feet would be, by the edge of my tire; one was found underneath my patrol car; and the other one that bounced off my patrol car was never found.

Olivarez did not object to this testimony. On cross-examination, he questioned Menz about the crime scene investigation:

> DEFENSE: Now, you said that Mr. Olivarez—the Crime Scene Unit found one bullet on the fence, the back fence; is that correct?
>
> MENZ: That is correct.
>
> DEFENSE: And they found—to your knowledge, was there any trajectory analysis done by any Crime Scene Unit at the scene, if you know?
>
> MENZ: Not to my knowledge.
>
> DEFENSE: Now you've indicated to the Judge that the vehicle, the front part of your vehicle, you said a bullet bounced off it? Did I misunderstand you, what you said?

3

MENZ:        No. That's correct.

DEFENSE:        Now, I've gone through the reports. There are no photographs or anything done of any damage to your vehicle. Were you aware of that?

MENZ:        No.

DEFENSE:        Now you would agree with me that if a Crime Scene Unit gets there—I think you also said that there were some shots that were fired to, I guess, the tires of your vehicle. Is that what I heard?

MENZ:        By the tires, sir.

DEFENSE:        By the tires. Okay. And you would agree with me that there were no bullets that were recovered by the Crime Scene Unit fired from the defendant, if you know?

MENZ:        I'm not aware of that, sir.

DEFENSE:        You would agree with me that they discovered not only the shell cases fired from—by Mr. Olivarez but the shell cases fired by you; is that correct?

MENZ:        That's correct.

DEFENSE:        And you are aware of that; is that correct?

MENZ:        That's correct.

Olivarez's psychiatrist and six of his family members testified at the punishment hearing. The psychiatrist testified that she evaluated Olivarez more than a year after the shooting, and she concluded that he was bipolar and suffered from anxiety. She believed that Olivarez could overcome his mental illnesses with proper treatment and eventually reintegrate into society. Olivarez's grandparents, father, aunt, and two uncles testified about his good nature, improvements since he

4

started taking medication, and their willingness to help him if the judge granted him probation. They asked that the trial judge grant Olivarez probation.

Olivarez testified, admitting that he drove his truck and carried two guns while under the influence of Xanax. He said that he did not know that a police officer had pulled him over or pursued him until Menz arrived at his grandmother's house. Despite his guilty plea, he testified that he was "not guilty of attempted capital murder." He said that he pleaded guilty because he thought "Officer Menz would testify maybe he thinks, you know, I was trying to kill him. I was not trying to attempt to commit murder of a police officer." But Olivarez conceded that he panicked when he realized Menz was a police officer and started shooting:

> Q:      So, at the time that you decide to pull out your gun and shoot, you didn't shoot in front of your car . . . . In other words, you pulled out and shot behind you, right?
>
> A.      Yeah. I started shooting—
>
> Q.      Behind you, right, Mr. Olivarez?
>
> A.      You could say that, more or less, behind me.
>
> Q.      And you knew the police officer was behind you, right?
>
> A.      No. No. No. No. My truck was stopped. When he came in, I just started shooting.
>
> Q.      Not in the air, correct?
>
> A.      I don't know. I don't know—

5

Q.      Well, you know based on talking to your attorney and reviewing the offense report and hearing the testimony, seeing the video—

A.      I know—

Q.      Let me finish my question—that it was not you just shooting in the air, right, Mr. Olivarez?

A.      Yes, ma'am.

Q.      And that you were shooting towards the police officer; is that correct?

A.      No, ma'am.

Q.      Then who were you shooting at?

A.      I wasn't shooting at anyone.

Q.      But you knew there was a police officer behind you?

A.      Right.  Yes, ma'am.

Q.      And you knew you wanted that police officer to try and shoot and kill you; is that correct?

A.      I knew there was a police officer when he came in my backyard, and so I started shooting so he would kill me but not at him.

The court sentenced Olivarez to 45 years in prison, and Olivarez appealed.

## Analysis

In his sole issue on appeal, Olivarez argues that Menz's testimony was false, and therefore he was deprived of a fair trial in violation of his right to due process. Specifically, Olivarez argues that based upon cross-examination, "it was clear that

6

Deputy Menz's claim that bullets were recovered from the scene was mistaken or fabricated." Olivarez made no objection to this evidence at trial. No complaint about the admission of this evidence has been preserved for appellate review. *See* TEX. R. APP. P. 33.1(a) (requiring that to preserve error for appellate review, the record must show that the defendant raised his complaint by making a timely and specific objection and obtaining a ruling from the trial court); *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012).

Olivarez argues that no objection was required to preserve what he characterizes as fundamental error. All but the most fundamental rights may be forfeited if not insisted upon by the party to whom they belong. *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002). Even constitutional error may be waived by failure to object at trial. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

An exception applies to two "relatively small" categories of error: (1) violations of waivable-only rights; and (2) denials of absolute, systemic requirements. *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003); *Saldano*, 70 S.W.3d at 888; *see Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S. Ct. 1246, 1265 (1991) (fundamental error occurs when certain constitutional rights are violated, such as the right to counsel, the right to an impartial judge, the right for there not to be unlawful exclusion of members of the defendant's race

from the grand jury, the right to self-representation at trial, or the right to a public trial); *see also* TEX. R. EVID. 103(d) (providing that courts are authorized to "tak[e] notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court").

"The Due Process Clause of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly." *Ex parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011). "Testimony need not be perjured to constitute a due-process violation; rather, 'it is sufficient that the testimony was false.'" *Ex parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2011) (quoting *Ex parte Robbins*, 360 S.W.3d at 459). "The question is whether the testimony, taken as a whole, gives the jury a false impression." *Id.* (citing *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011)). To constitute a due-process violation, the allegedly false testimony must also be material, i.e., there must be a reasonable likelihood that the false testimony affected the defendant's conviction or sentence. *See Ex parte Chavez*, 371 S.W.3d at 208.

Olivarez has not shown a fundamental error. Nothing in the record on appeal demonstrates that Menz's testimony was false. Menz testified that Olivarez shot at him. Though Olivarez contends that he was not aiming at Menz, he conceded that he knew a police officer was behind him and he fired shots in that

8

direction. No matters outside the record from the punishment hearing have been developed, preserved, or presented for our review in this direct appeal, as may be the case in a post-conviction habeas corpus proceeding. *See, e.g.*, *Ex parte Chavez*, 371 S.W.3d at 208; *Ex parte Robbins*, 360 S.W.3d at 446. Olivarez has not shown that any testimony about recovery of bullets from the crime scene was material to a disputed sentencing issue. He had already pleaded guilty to the offense. His sentence was within the statutory range of punishment, and he has not shown that Menz's challenged testimony, which amounted to little more than his statement that he did not know certain details about the investigation of the crime scene, affected his sentence.

We overrule Olivarez's sole issue.

## Conclusion

We affirm the judgment of the trial court.


                                          Michael Massengale
                                          Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).