

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,925

### EX PARTE CATHY LYNN HENDERSON, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM CAUSE NO. 94-2034 IN THE
### 299TH DISTRICT COURT OF TRAVIS COUNTY

**Price, J., filed a concurring opinion.**

### <u>CONCURRING OPINION</u>

Back in 2007, I voted to allow the applicant in this cause to proceed on the merits of

a subsequent writ application because I believed that her application contained previously

unavailable specific facts sufficient to make out a prima facie case for a constitutional claim

of actual innocence.[1]  Now that the applicant has had a chance to develop a record in support

of her claim of actual innocence, I agree with both Judge Keasler (and, implicitly, Judge

Cochran) that her evidence falls short of satisfying the "Herculean" burden imposed on

---

[1]    *Ex parte Henderson*, 246 S.W.3d 690, 693 (Tex. Crim. App. 2007) (Price, J., concurring).

applicants making a bare claim of actual innocence under the standard we laid out in *Ex parte Elizondo*.[2]  And yet, the convicting court has recommended that we grant the applicant a new trial, and the State has declared itself content to go along with that ultimate recommendation. I write separately to explain why, particularly in light of my concurring opinion last year in *Ex parte Robbins*,[3] I, too, am content to grant the applicant a new trial in this case—but on the basis of the inadvertent use of false evidence rather than actual innocence.

A bare claim of actual innocence and a claim that false evidence was inadvertently used to obtain a conviction both fall along a continuum of due process violations.  At one end of the continuum is a claim that the State has knowingly used false or perjured testimony. Here, due process is primarily concerned with the fairness of the trial.[4]  Because of the State's complicity in undermining the integrity of the process, the standard for materiality is comparatively low: a reasonable possibility that the false or perjured testimony contributed to the conviction.[5]  At the other end of the continuum is a bare claim of actual innocence. An actual innocence claim does not depend upon a showing of misconduct of any kind on

---

[2]

*See Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006) ("Establishing a bare claim of actual innocence [under the standard set out in *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996)] is a Herculean task.").

[3]

360 S.W.3d 446, 463-68 (Tex. Crim. App. 2011) (Price, J., concurring).

[4]

*Id*. at 464 (Price, J., concurring).

[5]

*United States v. Bagley*, 473 U.S. 667, 678-80 & n.9 (1985).

the part of the State. The due process concern is with the accuracy of the result.[6] For that reason, an actual innocence claim will result in habeas corpus relief only upon a showing of extreme materiality: the applicant must be able to show by clear and convincing evidence that, given the newly available evidence of innocence in addition to the inculpatory evidence presented at trial, no reasonable juror would have convicted him.[7] And, as Presiding Judge Keller has advocated, and I agree, "[t]he unknowing use of perjured or false testimony falls [or at least *should* fall] in between these endpoints, with a mid-level standard (or standards) of materiality."[8] Thus, as the particular due process claim moves from the fairness end of the continuum toward the accuracy end, the standard for materiality should rise concomitantly, culminating in the Herculean burden associated with a bare claim of actual innocence.

Though I do not think that the applicant has proven actual innocence in this case, I do believe that she has established that her conviction violated her right to due process. She has proven to my satisfaction that her conviction was based in critical part upon an opinion from the medical examiner that he has now disowned because it has been shown by subsequent

---

[6]

*Robbins*, at 463 (Price, J., concurring).

[7]

*Elizondo*, *supra*, at 209.

[8]

*Ex parte Chavez*, 371 S.W.3d 200, 216 (Tex. Crim. App. 2012) (Keller, P.J., dissenting). The majority in *Chavez* seems to have applied the same standard of materiality for the unknowing use of false or perjured evidence as for the knowing use. *See Chavez*, *supra*, at 208-09 (applying "reasonable likelihood" standard of materiality). Needless to say, I am not in favor of that. *Robbins*, *supra*, *passim* (Price, J., concurring).

scientific developments to be highly questionable. In *Robbins*, a non-death-penalty capital murder case, the applicant raised claims of actual innocence and the inadvertent use of false evidence. I joined the majority opinion denying relief on both claims, but wrote separately to express my view that, "when it comes to claims of the inadvertent use of false evidence, we must not be overly liberal in how we characterize 'false' evidence."[9] One immediately obvious difference between *Robbins* and the instant case is that *Robbins* did not involve intervening scientific developments—the medical examiner in *Robbins* simply changed her mind between the time of her trial testimony and the post-conviction writ proceedings.[10] Here, the medical examiner currently believes that intervening research in the science of biomechanics has undercut his trial testimony, and the convicting court has accepted that as a sufficiently accurate statement of the condition of current scientific/medical knowledge to justify the conclusion that the applicant's trial was rendered unfair—and quite possibly inaccurate—by the medical examiner's now-disowned trial testimony. Under these circumstances, I am far less hesitant to characterize the trial testimony as "false."

Nor does it trouble me that, when the applicant filed her subsequent writ application in 2007, she did not include a false-evidence claim, *per se*. Having filed her subsequent writ

---

[9] *Robbins*, *supra*, at 465 (Price, J., concurring).

[10] *Id*. at 463 ("[U]nlike *Henderson*, [the medical examiner's] re-evaluation was not attributed to new scientific information but was instead based on the same autopsy findings and other information that she had at the time of trial.").

application two-and-a-half years before we issued our opinion in *Ex parte Chabot*,[11] she could not have known that we would come to entertain claims of the *inadvertent* use of false evidence.[12] Even so, embedded within her claim of actual innocence are facts sufficient to allege such a claim,[13] and in pursuing her actual innocence claim, she has ultimately developed facts sufficient to prove it.

My concurring opinion in *Robbins* was fueled by a concern that the materiality standard we have applied to claims of the inadvertent use of false or perjured evidence since *Chabot* may not be sufficiently stout. To my way of thinking, such claims fall closer to the accuracy-of-the-result actual-innocence end of the continuum than the fairness-of-the-process State-complicity end. Accordingly, while a claim that the State inadvertently used false or perjured testimony should not be subject to quite the same Herculean standard of materiality as an actual innocence claim, still, if we are to recognize it as a valid due process claim at all, we should subject it to a materiality standard that is relatively high. I did not think that

---

[11]

300 S.W.3d 768, 771 (Tex. Crim. App. 2009).

[12]

*Cf. Chavez*, *supra*, at 205 ("*Chabot* was the first case in which we explicitly recognized an unknowing-use due-process claim; therefore, that legal basis was unavailable at the time applicant filed his previous application. *See* TEX. CODE CRIM. PROC. art. 11.07 § 4(a)(1).").

[13]

*See Ex parte Napper*, 322 S.W.3d 202, 243 (Tex. Crim. App. 2010) ("[W]e observe that our 'actual innocence' jurisprudence could encompass a claim on habeas that involved newly discovered evidence that a witness's testimony was false."); *Chavez*, *supra*, at 216 n.30 (Keller, P.J., dissenting) ("Although *Elizondo* was decided as an actual innocence case, it would also have satisfied the predicate, under today's standards, for an unknowing-use-of-perjured-testimony claim because the recantation of a testifying witness was at issue.").

Robbins could meet such a high standard of materiality and believed that to grant him relief under the circumstances of that case would effectively undermine our actual innocence jurisprudence. I therefore voted to deny relief in *Robbins*.

By contrast, on the facts of this case, as detailed in Judge Cochran's concurring opinion, it is evident to me that the applicant can meet practically any standard of materiality less than that applicable to a bare actual innocence claim. In *Ex parte Chavez*, I recently took the position that a subsequent post-conviction habeas applicant should not be permitted to proceed to the merits of his inadvertent-use-of-false-evidence claim because, regardless of whatever standard of materiality we might apply, the subsequent applicant could not possibly meet it.[14] In this case, my view is just the opposite. While she cannot satisfy the Herculean materiality standard to satisfy a claim of actual innocence, the present applicant has demonstrated materiality under whatever marginally lesser standard we may care to carve out to govern a claim that due process has been violated by the inadvertent use of false evidence. That is enough to convince me that the Court appropriately adopts the convicting court's ultimate recommendation—acceded to by the State—to grant the applicant a new capital murder trial.

FILED:     December 5, 2012
PUBLISH

---

[14]

   *Chavez*, *supra*, at 220-21 (Price, J., dissenting).