WR-62,593-04
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/25/2015 4:25:50 AM
Accepted 8/25/2015 8:06:00 AM
ABEL ACOSTA
CLERK

NO. 762351
NO. 62,593-04

| EX PARTE | § | IN THE 232ND JUDICIAL |
| | § | DISTRICT COURT OF |
| | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | AND |
| | § | |
| | § | THE TEXAS COURT OF |
| BERNARDO ADAN TERCERO | § | CRIMINAL APPEALS |

### APPLICANT BERNARDO TERCERO'S REPLY TO THE STATE'S "MOTION TO DISMISS APPLICANT'S SUBSEQUENT APPLICATION FOR WRIT OF HABEAS CORPUS AND MOTION TO DENY REQUEST FOR STAY OF EXECUTION"

COMES NOW Applicant, Bernardo Adan Tercero, by and through his pro-bono counsel, Walter C. Long, and pursuant to the provisions of Article 11.071, Vernon's Ann. C.C.P., presents this his Reply to "Respondent's Motion to Dismiss Applicant's Subsequent Application for Writ of Habeas Corpus and Motion to Deny Request for Stay of Execution," and as grounds therefore, would respectfully show this Honorable Court the following:

The Respondent, State of Texas, answered Mr. Tercero's application for habeas corpus with two assertions: (1) Mr. Tercero does not satisfy the subsequent application requirements of Article 11.071, Section 5; and/or (2) Mr. Tercero has presented grounds for relief that are without merit. Respondent's Motion to Dismiss at 1-2 [hereinafter "Motion"]. On the basis of these two assertions, the State asks this Court to dismiss Mr. Tercero's application and deny his motion for a stay of execution. *Id*. The State is mistaken.

**1. The State errs in asserting that Mr. Tercero has not satisfied the requirements of Article 11.071 §5.**

The State does not contest that in *Ex parte Chavez* this Court held that the unknowing false

testimony standard in *Chabot v. State* is new law with respect to any applicant who has not filed an application after *Chabot*. Mr. Tercero is clearly within the school of applicants for whom *Chabot* is new law according to *Chavez*. *Chabot v. State*, 300 S.W.3d 768 (Tex. Crim. App. Dec. 9, 2009); *Ex parte Chavez*, 371 S.W.3d 200, 207-08 (Tex. Crim. App. 2012). Instead, the State's argument that this should not be an authorized subsequent application is all about factual unavailability, which is not a ground that Mr. Tercero is arguing.

The State thus asserts that Mr. Tercero provides "no reasonable explanation for the dilatory urging of the instant ground for relief" when "the factual basis for the instant claim was available when the applicant filed his 2008 subsequent state habeas application." Motion at 6. The State confuses the two "availability" prongs of Section 5 (a) (1). Mr. Tercero is relying upon the legal, not factual, unavailability prong. In 2000, when Mr. Tercero's trial investigator interviewed Ms. Cotera, shortly after trial, and she told him that she had given some false testimony, there was no legal basis upon which appellate or state habeas counsel could have raised a claim based upon her false testimony alone. That basis did not arise until *Chabot* first recognized that false testimony—whether known or unknown to the State—violates due process. Mr. Tercero's point is that, no matter how long the fact that Ms. Cotera testified falsely had been known, there was no vehicle for Mr. Tercero to use that fact to object on due process grounds until *Chabot*, which was issued a year and a half after the filing of Mr. Tercero's most recent prior state habeas application.

Mr. Tercero is raising a *Chabot*, not *Napue*, claim. *Napue v. Untied States*, 360 U.S. 264 (1959). The Vargas memo, providing some information in 2000 that Cotera testified falsely, does not establish all of the elements needed to plead a *Napue* claim, because it discloses no evidence that

the prosecutor Sally Ring or any of her agents knew that Ms. Cotera was testifying falsely.[1] Reasonably, they could not have known unless they literally invented some of Cotera's testimony, because Cotera's testimony exclusively had to do with things she alleged Mr. Tercero said to her in her presence alone.

It is clear from the Vargas memo that the prosecutor's behavior with Ms. Cotera, if true, may have contributed to her presentation of false testimony. Additionally, the odd circumstance of Ms. Cotera's recruitment as a witness by Ms. Ring herself, during trial, only days before Cotera is put on the stand, suggests that the State was aware of the weakness of its circumstantial evidence case that Mr. Tercero shot Mr. Berger with the intent to kill him. The behavior suggests overreaching in order to protect a threatened conviction. However, there is no evidence to this day that Ms. Ring knew that she was creating false testimony and, thus, establishing a *Napue* violation.

The State argues as though it would like to defeat Mr. Tercero's attempt to obtain jurisdiction through the new legal basis in *Chabot* now, by having Ms. Ring supply the missing *Napue* element, confessing that she did know Cotera testified falsely. Should this Court have any doubt about whether the prosecutor was ignorant of Ms. Cotera's false testimony it should stay Mr. Tercero's execution date and remand the case to the trial court for fact finding.[2]

---

[1] According to the Vargas memo, Ms. Cotera alleged that the prosecutor told her to "say that Bernardo had killed for pleasure," but she did not testify to that in court. She said that the prosecutor told her not to talk about the allegation that they had made when they first met her—that Tercero had accused her of keeping the gun and some money. She stated that her false testimony about Mr. Tercero saying that he killed because there was a child witness was the product of her feeling afraid and threatened by the State, denying that the prosecutor had asked her to make that statement "precisely." Application Exhibit 3 (Rudy Vargas, Supplemental Report #2, at 5-6).

[2] Nothing remotely was said about an "imminent *Brady* claim" in the Suggestion. Motion at 7. To the contrary, Mr. Tercero said Cotera accused the prosecutors of misconduct in the Vargas memo, that he was "not raising a claim here, but wishe[d] the Court and the Harris County District Attorney's Office to know of Ms. Cotera's statement, because it [was] very concerning." Suggestion at 9 n.8. It is very concerning to think that the Harris County District Attorney's office would let Mr. Tercero be executed while a serious question exists whether its agents might have generated false testimony in a State's witness, even inadvertently or unknowingly.

**2. The State mischaracterizes Ms. Cotera as an inconsistent witness.**

The State alleges that, in her current affidavit, Ms. Cotera now blames rage that she felt against Mr. Tercero, rather than any State "misconduct," for her false testimony, as though she has changed her story and is an vacillating witness. Motion at 7-8 (citing *Ex parte Harleston*, 431 S.W.3d 67, 89 (Tex. Crim. App. 2014)). The State cherry picks, privileging para. 8 of Ms. Cotera's affidavit over the prior paragraphs (6 and 7) in which Ms. Cotera talks about the lie told her by the prosecutors — that Mr. Tercero accused her of keeping money from the robbery and the pistol — causing her to be very afraid of prosecution, jail, and deportation, *as well as* causing her to be enraged at Mr. Tercero because she believed the State's lie. This is completely consistent with the Vargas memo which also portrays her as fearful of the State and upset with Mr. Tercero.

**3. Mr. Tercero has presented a meritorious claim.**

Mr. Tercero has pled a claim which, if taken as true, entitles him to relief from his conviction and/or sentence. The centrality of Ms. Cotera's false testimony to the State's proof of intent to kill cannot be debated. Only Cotera provided (false) testimony that Mr. Tercero intended to kill to eliminate witnesses. Otherwise, no one testified that they saw Tercero aim or point his gun at anyone. The gun came into view in the struggle between Mr. Tercero and Mr. Berger that the most conservative witness, Ms. Johnson, said lasted a full minute, which is a long time. 16 SF 247. Ms. Johnson corroborated Mr. Tercero's testimony that he and Berger tussled face to face. *Id*.; 19 SF 60; *see* Motion at 9.

Presumably, if Mr. Tercero had aggressed initially against Mr. Berger while also wanting him dead, he would have out-and-out shot Mr. Berger rather than tried to push him in the direction of the door. Mr. Tercero's surprise at seeing Berger in the store and aggression toward him, Motion at 9

4

(surprise; going to other side of the counter); *id* at 10 (Alberty and Johnson talking about Tercero as aggressor), reflect a startled robber, not necessarily a murderer.

The State found itself reduced to a gunshot wound angle arising in the midst of a two person melee as the basis for intent to kill. No one saw Mr. Tercero take any additional shots at Berger or anyone else; the additional live rounds on the floor possibly having been dropped from a racked gun or Mr. Tercero's pocket prior to or during the melee.

The State's case for specific intent to kill was not supported by an "abundance of evidence" at all. Motion at 10 (citing *Ex parte Weinstein*, 421 S.W.3d 656, 667-68 (Tex. Crim. App. 2014)). That probably is why the State reached out to interrogate Ms. Cotera during the trial and shored up its weak evidence with her alleged admissions by Mr. Tercero regarding his *mens rea* at the time of the offense. The weakness of the State's case is why the State relied on Cotera to argue no less than seven times that "guns don't accidentally go off during a robbery. Guns are used to eliminate witnesses during a robbery." 20 SF 52, 53, 55, 59, 60, 66, and 67. Of course, guns accidentally go off during robberies. Absent Cotera's "untouched" (20 SF 65-66) testimony, that plausibly happened in the instant case.

5

WHEREFORE, PREMISES CONSIDERED, Mr. Tercero respectfully requests that this Court grant his motion for stay of execution, find that his application has met the requirements of Section 5 (a) (1) of Article 11.071, Texas Code of Criminal Procedure, grant review of the application and remand it to the trial court for an evidentiary hearing on the claim that the State unknowingly presented false testimony, and ultimately grant Mr. Tercero relief from his conviction and sentence.

Respectfully submitted,


/s/ Walter C. Long
WALTER C. LONG

Walter C. Long
Texas Bar No. 24002491
P.O. Box 41557
Austin, Texas 78704
512-912-0722 (office phone/fax)
512-554-2269 (cell phone)
waltlong@aol.com


CERTIFICATE OF SERVICE

I, Walter C. Long, do hereby certify that a true and correct copy of the foregoing document has been served by electronic means on this, the 25th day of August, 2015, to the office of Assistant District Attorney Josh Reiss, Harris County District Attorney's Office, 1201 Franklin Street #600, Houston, Texas 77002, and also by email at reiss_josh@dao.hctx.net.


/s/ Walter C. Long
Walter C. Long