

# NUMBER 13-22-00395-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE LUIS VASQUEZ
A/K/A JOSE VASQUEZ,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

## On appeal from the 357th District Court
## of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña
Memorandum Opinion by Justice Peña**

Appellant Jose Luis Vasquez a/k/a Jose Vasquez appeals his convictions for murder and aggravated kidnapping. *See* TEX. PENAL CODE ANN. §§ 19.02(c), 20.04. A jury found Vasquez guilty and assessed prison terms of life and fifty-five years, which the trial

court ordered to run concurrently. In one issue, Vasquez argues that two witnesses gave false testimony in violation of his due process rights. We affirm.

## I. BACKGROUND

A grand jury returned an indictment alleging that Vasquez intentionally and knowingly caused the death of Jose Villarreal Jr. by shooting Villarreal with a firearm. The indictment further alleged Vasquez intentionally and knowingly abducted Villarreal while using or exhibiting a firearm.[1] Vasquez pleaded not guilty, and the case proceeded to trial, at which the following evidence was adduced.

Britny Perez, Sandra Reyna, and Vasquez were at Vasquez's house in Brownsville, Texas, one evening, when they conspired to lure Villarreal over so that they could rob him. Reyna invited Villarreal over under the guise that Perez would have sex with him for money. Reyna instructed Perez to get the PIN to Villarreal's debit card. Villarreal accepted the invitation, arriving at the house shortly thereafter. However, after seeing Vasquez at the house, he became nervous and left. Perez texted Villarreal that evening to return to the house, lying that Vasquez was no longer present. Early the next morning, Perez and Reyna were waiting outside when Villarreal arrived back at the house in his vehicle. At that point, Vasquez immediately exited the house and forced Villarreal into his own car at gunpoint. According to Perez, Vasquez fired a warning shot into the air, and everyone entered the vehicle, with Reyna driving. Once inside, Vasquez fired another warning shot through the vehicle's roof. Reyna then drove to a nearby drive-thru ATM, while Vasquez kept his gun trained on Villarreal. Reyna attempted to retrieve money

---

[1] The State dismissed Count II of the indictment, alleging the offense of engaging in organized criminal activity. *See* TEX. PENAL CODE ANN. § 71.02.

using Villarreal's debit card, but there were insufficient funds in his account. Next, the group traveled to a nearby Stripes convenience store. Perez entered the store and attempted to use Villarreal's debit card on the store's ATM. She was also unsuccessful in retrieving any money.

Upon Perez's return to the vehicle, Vasquez instructed Reyna to drive to a less-trafficked area. Perez described the location where they stopped as having a wooded area on the side of the road. Perez testified that Vasquez instructed Villarreal to walk toward the wooded area. She stated that Villarreal walked a short distance with his hands up when Vasquez shot Villarreal three times. Perez stated that the first shot looked like it was aimed at Villarreal's head. Reyna provided a similar account but stated that Vasquez was pointing the gun at Villarreal's chest.

Around 9:30 a.m. that morning, a person called 9-1-1 after discovering a lifeless body on the side of the road. Brownsville Police Department officers responded to the scene and identified the deceased as Villarreal. Officer Juan Arellano spoke with Villarreal's family and received a description of his vehicle. Three days later, officers discovered Villarreal's vehicle in an alley behind Vasquez's house. Upon searching the vehicle, officers discovered an ATM receipt from IBC Bank with a timestamp. Officers also observed a bullet-hole in the vehicle's roof. Officer Arellano obtained surveillance video from the ATM as well as the nearby Stripes convenience store. He identified Reyna as the driver of the vehicle and Vasquez as the passenger by comparing the surveillance video to their social media profile and mug shot pictures. He identified Perez from the Stripes surveillance footage. The trial court admitted both videos, which were published

3

to the jury.

Elizabeth Miller, M.D., the Cameron County forensic pathologist, performed Villarreal's autopsy. Dr. Miller testified that Villarreal had two penetrating gunshot wounds as well as graze wounds. She stated that one bullet entered in the lower abdomen, traveled upward passing through the liver and the diaphragm, and came to rest in the left side of the neck. The other bullet entered through the upper left part of the back, grazed the vertebrae, and came to rest in the right side of the neck. The jury found Vasquez guilty. This appeal followed.

## II.    STANDARD OF REVIEW & APPLICABLE LAW

"The use of material false testimony to procure a conviction violates a defendant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution." *Ukwuachu v. State*, 613 S.W.3d 149, 156 (Tex. Crim. App. 2020) (citing *Ex parte De La Cruz*, 466 S.W.3d 855, 866 (Tex. Crim. App. 2015)). In reviewing a claim alleging the use of material false testimony, we must determine whether: (1) the testimony was actually false, and (2) whether it was material. *Id*. (citing *Ex parte Weinstein*, 421 S.W.3d 656, 665 (Tex. Crim. App. 2014)). "To establish falsity, the record must contain some credible evidence that clearly undermines the evidence adduced at trial, thereby demonstrating that the challenged testimony was, in fact, false." *Ex parte Reed*, 670 S.W.3d 689, 767 (Tex. Crim. App. 2023) (citing *Ukwuachu*, 613 S.W.3d at 156). The evidence of falsity must be definitive or highly persuasive. *Id.* (citing *Ukwuachu*, 613 S.W.3d at 157); *see Estrada v. State*, 313 S.W.3d 274, 286 (Tex. Crim. App. 2010) (taking judicial notice of a prison regulation regarding the classification system for incarcerated

4

capital murderers and holding that the regulation was sufficient to establish the falsity of contradictory expert testimony at trial). However, the evidence does not have to demonstrate perjured testimony, only that the testimony left the jury with a false or misleading impression. *Ex parte Reed*, 670 S.W.3d at 767 (citing *Ukwuachu*, 613 S.W.3d at 156); *see Ex parte Chaney*, 563 S.W.3d 239, 263 (Tex. Crim. App. 2018) ("Whether evidence is false turns on whether the jury was left with a misleading or false impression after considering the evidence in its entirety."). False testimony is material if there is a reasonable likelihood that it could have affected the jury's judgment. *Ex parte Reed*, 670 S.W.3d at 767 (first citing *United States v. Agurs*, 427 U.S. 97, 103 (1976); then citing *Ex parte Chavez*, 371 S.W.3d 200, 206–07 (Tex. Crim. App. 2012)).

### III.   DISCUSSION

Vasquez argues that Perez and Reyna's testimony that Vasquez shot Villarreal in the head or face was false given the autopsy conclusions that Villarreal was shot in the abdomen and back. We disagree that this inconsistency is evidence that the two witnesses gave false testimony.[2]

We first note that the purported evidence of falsity was actually heard by the jury, whose function is to resolve conflicts in the testimony, weigh the evidence, and evaluate the credibility of witnesses. *See Harrell v. State*, 620 S.W.3d 910, 913–14 (Tex. Crim. App. 2021). We must presume that the jury resolved this inconsistency in favor of its

---

[2] It does not appear that Vasquez ever made the trial court aware of his false-evidence claim, although he did move for a directed verdict urging that the trial court reject Perez and Reyna's testimony as unreliable. We assume without deciding that Vasquez has preserved this issue for review. *See Estrada v. State*, 313 S.W.3d 274, 288 (Tex. Crim. App. 2010) (holding that a false-evidence claim was not procedurally defaulted; defendant "had no duty to object because he could not reasonably be expected to have known that the testimony was false at the time that it was made").

verdict, meaning that it found Perez and Reyna were credible in describing the shooting, but were simply mistaken as to where Vasquez shot Villarreal. *See id.* Stated otherwise, inconsistencies in the evidence simply do not demonstrate that a particular witness's testimony is false. *See Ex parte De La Cruz*, 466 S.W.3d at 870–71 ("Here, the record merely highlights the existence of inconsistencies in the evidence presented at applicant's trial with respect to the location of the shooting, but those inconsistencies do not, without more, support the trial court's fact finding that Torres's testimony is false."); *see also United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997) (explaining that the fact that witnesses have given inconsistent or conflicting testimony does not establish that such testimony was false); *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir.1990) (explaining that conflicting trial testimony between witnesses "merely establishes a credibility question for the jury" and does not suffice to demonstrate that the evidence was false).

For the same reason, Vasquez cannot establish the materiality prong. Because Dr. Miller testified contrary to Perez and Reyna concerning the location of the gunshot wounds, the jury necessarily considered this evidence in reaching its verdict. In fact, Vasquez attacked the credibility of Perez and Reyna on this very basis. As such, there is not a reasonable likelihood that Perez and Reyna's testimony regarding the location of the gunshot wounds affected the jury's judgment. *See Ex parte De La Cruz*, 466 S.W.3d at 871 (concluding that alleged false evidence was not material, while explaining that "[a]s the record clearly indicates, the jury was aware of the inconsistencies between Torres's version of events and the expert opinion testimony, and it nevertheless chose to convict applicant on the basis of Torres's testimony"). We conclude that Vasquez has not

6

demonstrated either prong of his false-evidence claim. *See Ukwuachu*, 613 S.W.3d at 156. We overrule his sole issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
17th day of August, 2023.