WR-59,201-03
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/20/2015 11:18:20 AM
Accepted 4/20/2015 11:28:23 AM
ABEL ACOSTA
CLERK

**IN THE 148TH DISTRICT COURT
OF NUECES COUNTY, TEXAS**

**AND**

**IN THE COURT OF CRIMINAL APPEALS OF TEXAS
IN AUSTIN, TEXAS**

| | |
|---|---|
| **RICHARD VASQUEZ, JR.** ) | |
| ) | **WRIT NO. 59,201-03** |
| ) | |
| **APPLICANT.** ) | **TRIAL COURT NO. 98-CR-0730-E** |
| ) | |
| ) | **CAPITAL CASE** |
| ) | |
| ) | **Scheduled Execution Date:** |
| ) | **April 23, 2015** |
| ) | |
| ) | |

**APPLICANT RICHARD VASQUEZ JR.'S
RESPONSE TO THE STATE'S
MOTION TO DISMISS**[1]

Last Wednesday, April 15, Applicant Richard Vasquez Jr. timely filed a subsequent application for a writ of habeas corpus and a motion for stay of execution in this Court and in the trial court. The State responded on Saturday, April 18, moving the Court to dismiss Mr. Vasquez's application and to deny his motion for a stay.[2] But in arguing that dismissal is warranted, the State assumes as

_____

[1] Although the State's filing also, somewhat confusingly, addresses Mr. Vasquez's motion for a stay with a "motion to . . . deny the motion to stay execution," State's M. to Dismiss at 2, it is fair to construe that part of the State's filing as a response in opposition rather than a separate motion. Thus, in the interest of brevity, this response will refer to the State's filing as its motion to dismiss.

[2] Because this response only opposes the State's motion to dismiss and does not seek any affirmative relief beyond what was requested in Mr. Vasquez's timely filed application and

true what it sets out to prove: "It was multiple blows to the head, as admitted by Vasquez himself, causing severe and extensive injury to the brain" that caused Miranda's death. State's M. to Dismiss at 12. But rather than identifying a valid basis for dismissal, the State's motion illustrates precisely why an evidentiary hearing is necessary—Mr. Vasquez's petition identifies new scientific evidence that forcefully contradicts the State's evidence on the cause of Miranda's death, and that evidence cannot be dismissed without careful consideration of the underlying science and the effect it would have had if it were introduced at Mr. Vasquez's trial. Accordingly, for the reasons set out below, the State's motion to dismiss should be denied.

## I.    The State's Concessions

In its motion to dismiss, the State has implicitly acknowledged several important areas of agreement with Mr. Vasquez. Through its silence, the State has effectively conceded that (1) Mr. Vasquez's claims are not barred by Section 5 of Article 11.071 of the Texas Code of Criminal Procedure; (2) the scientific evidence discussed in Mr. Vasquez's application is admissible under the Texas Rules of Evidence; (3) material scientific evidence discussed in Mr. Vasquez's application

---

motion for stay, it is not subject to this Court's Miscellaneous Rule 11-003. However, in case the Court decides that Miscellaneous Rule 11-003 does apply, counsel has attached an affidavit explaining why it was factually impossible to file this response more than seven days before Mr. Vasquez's execution date.

was not available to be offered at his trial;[3] (4) the scientific evidence regarding biomechanics discussed in the application meets the standard for relief under Article 11.073; and (5) Mr. Vasquez's application alleges valid claims for habeas relief based on *Ex parte Chabot*, 300 S.W.3d 768 (Tex. Crim. App. 2009), *see* Application at 37–43, and actual innocence, *see* Application at 43–44. Thus, in ruling on Mr. Vasquez's motion to stay and the State's motion to dismiss, the Court can consider those issues undisputed and focus its attention on the areas of disagreement identified below.

## II.     Mr. Vasquez has pleaded a claim for relief under Article 11.073.

In its motion to dismiss, the State basically concedes that Article 11.073 would provide relief in "a case where the defendant claimed at trial that the victim fell from a sufficient height to have caused a fatal injury, where that theory was discredited by expert testimony considered valid at the time, and where new scientific evidence would suggest that the theory in question was a valid explanation for the fatal injury based on data comparing substantially similar fatal and non-fatal falls." State's M. to Dismiss at 12. That is precisely the case that is before the Court. As set out in Mr. Vasquez's application, Miranda *did* fall from a sufficient height to cause a fatal injury—Mr. Vasquez explained that Miranda fell

---

[3] The exception is Dr. Squier's discussion of Shaken Infant Syndrome, which, for reasons discussed below, the State erroneously characterizes as being based on a study published in 1987.

3

from a stool immediately before she lapsed into a coma, and in light of modern scientific knowledge it is now clear that a fall from that height (10.5 inches for the stool plus Miranda's height of 41 inches equals a fall of over four feet) can be fatal. *See* Application at 27–29 (discussing new scientific evidence showing that short falls can be fatal). And that theory *was* discredited by expert testimony considered valid at the time—Dr. White casually dismissed the possibility that falling from the stool could have caused Miranda's death and Dr. Burke totally excluded that possibility by testifying that Miranda's wounds could only have been caused by intentional child abuse. *See* Application at 13–16 (discussing the trial testimony of Drs. White and Burke). And as the attachments to the State's motion show, there *is* new scientific evidence based on case studies involving substantially similar falls that show falling from a stool is a valid explanation for Miranda's death. *See* Application at 27–29. Thus, by the State's own description of a valid claim under Article 11.073 (not to mention this Court's description of a *prima facie* claim under Article 11.073, *see* Application at 22–24 (discussing *Ex parte Robbins*, 2014 WL 6751684 (Tex. Crim. App. Nov. 26, 2014))), the facts alleged in Mr. Vasquez's application state a valid claim under Article 11.073.

But the State denies this conclusion, flatly asserting that "it was multiple blows to the head, as admitted by Vasquez himself, causing severe and extensive injury to the brain" that caused Miranda's death. State's M. to Dismiss at 12. The

4

State does not, however, immediately attempt to justify that statement, choosing instead to cloud the issues by pointing to Mr. Vasquez's admission that he struck Miranda and other evidence that supposedly proves that Miranda had suffered other, unrelated abuse. That evidence is beside the point because Mr. Vasquez was not tried for having struck Miranda, and in any event his admitted conduct does not amount to a capital crime. The conviction Mr. Vasquez is challenging is for capital murder, and his application is based on new scientific evidence showing that he was not guilty of that crime. Thus, in order to show that dismissal is proper, the State cannot simply reiterate evidence that was introduced at trial and must instead attempt to identify some deficiency in the claims for relief set out in Mr. Vasquez's application.

The State's discussion on that point is halfhearted at best. In an attempt to discredit Dr. Young's declaration, the State notes that the studies he cites in his report dealt with falls from heights as low as two feet. Because Miranda fell from a stool that was 10.5 inches high, the State reasons that the articles Dr. Young cites are inapplicable. But to reach that conclusion, the State has to ignore the fact that Miranda, who was 41 inches tall at the time, was standing on the stool when she fell. That means her head was over four feet off the ground, putting her fall squarely within the ambit of the studies discussed in Dr. Young's report. The

5

State's other attempts to cast doubt on Dr. Young's declaration[4] illustrate again why factual questions render dismissal inappropriate: Dr. Young is a trained pathologist, and the State's attempts to challenge that conclusion amount to, at best, the educated guesses of a layperson. If the Court is to have a credible basis for evaluating Dr. Young's conclusions and the new science they are based upon, an evidentiary hearing in the trial court is necessary.

The State's gripes with Dr. Squier's declaration are even less compelling. First, the State attempts to show that Dr. Squier's opinions regarding Shaken Infant Syndrome are not based on new science by pointing to a 1987 article cited in her declaration. But context matters, and one look at Dr. Squier's declaration shows that she only cited that article to show that Dr. Burke's testimony misrepresented a study that he mentioned at trial. *See* Application Ex. B. at 3 ("[Dr. Burke's] testimony does not accurately reflect Duhaime's study.") In the preceding paragraph, however, Dr. Squier expresses her own opinion on the current state of scientific knowledge on Shaken Infant Syndromes, and there she cites to a 2012 study that was clearly unavailable at the time of Mr. Vasquez's 1999 trial. *See* Application Ex. B. at 3. The State's other criticism—*i.e.*, that Dr. Squier's opinions are based on "an unverified assumption that Vasquez . . . was telling the

_____

[4] For example, by noting that "the dynamics and motions involved in falling from a swing or other movable playground equipment are different from those involv[ed] in falling from a stationary stool, as well as the nature of the surface or structure onto which the child fell." State's M. to Dismiss at 14.

truth about the sequence of events at the time of the injury," State's M. to Dismiss at 15—is highly misleading.  As Dr. Squier's declaration shows, her opinions were not based solely on Mr. Vasquez's testimony but upon her review of copious evidence including "trial transcripts from the capital murder trial of Richard Vasquez and various exhibits from that trial, including the autopsy report of Miranda Lopez, a police report, Richard Vasquez's statement to the police, voluminous medical records and photographs of Miranda Lopez."  Application Ex. B at 2.  After she reviewed that evidence, and in light of her professional experience and the new science discussed in her report, she reached a conclusion that supports Mr. Vasquez's innocence.  The State cannot object to that conclusion based solely on the fact that it corroborates Mr. Vasquez's story—otherwise, a claim for relief under Article 11.073 would be functionally impossible.  Instead, the State's criticisms of Dr. Squier's report serve again to show why dismissal is inappropriate; cross-examination at an evidentiary hearing is the proper way to identify and challenge the bases of Dr. Squier's expert opinions, not bare assertions of counsel in a motion to dismiss.

The State does concede that Dr. Squier's opinions regarding Second Impact Syndrome are based on new science.  On that point, the State denies only that the new science on Second Impact Syndrome establishes that Mr. Vasquez's strikes "were clearly insufficient to cause [Miranda's] death."  State's M. to Dismiss at 17.

7

Setting aside the fact that the State's evaluation of scientific knowledge regarding Second Impact Syndrome should be presented to the trial court at an evidentiary hearing rather than to this Court on a motion to dismiss, the more fundamental problem with the State's argument is that it relies on the wrong standard of proof. According to the State, Mr. Vasquez cannot maintain a claim for relief under Article 11.073 unless he presents evidence that clearly shows that the fall from the stool was the only possible explanation for Miranda's death. *See* State's M. to Dismiss at 16 (citing Tex. Pen. Code. Ann § 6.04(a), which deals with concurrent causation). But that is not the standard: at this stage Mr. Vasquez need only allege that "there is arguably relevant scientific evidence that contradicts scientific evidence relied on by the state at trial, and that evidence was not available at trial . . . ," *Ex parte Robbins*, 2014 WL 6751684, at *8 (discussing the elements of a prima facie claim under Article 11.073), and to ultimately prevail on the merits of his claim under Article 11.073, Mr. Vasquez need only prove by a preponderance that he would not have been convicted of capital murder if the new evidence had been admitted at his trial, Tex Code. Crim. Pro. art 11.073(b)(2). (The prejudice standard for Mr. Vasquez's unchallenged claim under *Ex parte Chabot* is even lower, requiring only a "reasonable likelihood that the false testimony affected [his] conviction or sentence," *Ex parte Chavez*, 371 S.W.3d 200, 207 (Tex. Crim. App. 2012).) Thus, the State's assertion that its evidence against Mr. Vasquez

might not have been insufficient as a matter of law to prove causation is simply irrelevant; the question here is whether the new scientific evidence might have led the jury to a different conclusion on the question of capital murder. On that point, Mr. Vasquez's application has pointed to compelling scientific evidence that shows he would not have been convicted of capital murder[5] and rebuts the State's evidence on both causation *and mens rea* (the latter of which the State does not even attempt to address in its motion to dismiss). In light of that evidence, Mr. Vasquez is entitled to ultimately succeed on the merits of claim for habeas relief under Article 11.073. But at this stage, a decision on the merits would be premature, so the Court should deny the State's motion to dismiss and remand Mr. Vasquez's application to the trial court with instructions to hold an evidentiary hearing.

## III. Mr. Vasquez's Motion to Stay

Other than the substantive arguments addressed above, the State identifies no grounds for opposing Mr. Vasquez's motion for a stay of execution pending a decision on the merits of his application. As discussed above, the State's substantive arguments for dismissal all fail, so Mr. Vasquez's motion to stay should be granted for the reasons set out in his motion and application.

---

[5] Despite the State's generic references to murder, the question under Article 11.073 is whether Mr. Vasquez would have been convicted of capital murder rather than one of the lesser included offenses of murder or manslaughter.

9

## IV.  Conclusion

Accordingly, for the reasons set out above, the State's motion to dismiss should be denied, and Mr. Vasquez's motion for a stay of execution should be granted.

Respectfully submitted,

EDISON, MCDOWELL & HETHERINGTON LLP

By:  */s/ Andrew M. Edison*
     Andrew M. Edison
     Texas Bar No. 00790629

     James M. Chambers
     Texas Bar No. 24092240

Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
Telephone:   (713) 337-5580
Facsimile:   (713) 337-8850
andrew.edison@emhllp.com
james.chambers@emhllp.com

ATTORNEYS FOR RICHARD VASQUEZ, JR.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion has been served on April 20, 2015, by email to the following:

Douglas K. Norman
Nueces County District Attorney's Office
901 Leopard Street, Room 206
Corpus Christi, TX 78401
douglas.norman@nuecesco.com
douglas.norman@co.nueces.tx.us

Matthew Ottoway
Office of the Attorney General
PO Box 12548
Austin, TX 78711
matthew.ottoway@texasattorneygeneral.gov

*/s/ Andrew M. Edison*
Andrew M. Edison