

NUMBER 13-14-00261-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**RICHARD H. VOLLICK,**                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                      **Appellee.**

### On appeal from the 117th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Longoria**
**Memorandum Opinion by Justice Garza**

A jury convicted appellant, Richard H. Vollick, of his third driving while intoxicated ("DWI") offense, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (West, Westlaw through Ch. 46, 2015 R.S.). The jury found that Vollick had been previously convicted of two additional felonies and assessed punishment at seventy years' imprisonment. *See id.* § 12.42(d) (West, Westlaw through Ch. 46, 2015 R.S.). By

four issues on appeal, Vollick contends that the trial court abused its discretion by (1) denying his request for mistrial based on a television news report, (2) not allowing his trial counsel to poll the jury under Texas Rule of Evidence 606(b), (3) not allowing his trial counsel to question the venire panel on a twenty-five-year minimum sentence, and (4) denying his motion for new trial based on allegedly false testimony. We affirm.

## I. BACKGROUND

On January 16, 2014, Vollick was charged by way of indictment with felony DWI. The indictment alleged that Vollick was convicted of DWI in May 2001 and again in December 2011. The indictment also alleged that Vollick was previously convicted of two other felonies, the first for burglary in December 1988 and the second for felony DWI in April 2012.

Port Aransas police officers arrested Vollick on December 26, 2013 for DWI after he ran over two signs exiting the Port Aransas ferry in Aransas Pass. Two eyewitnesses testified that they saw Vollick strike one sign and then travel along the median until he hit another sign. One of the eyewitnesses, a ferry deck hand, testified that Vollick's facial expression and eyes were droopy, his speech was slurred, and his movements were sluggish. In her opinion, based on these observations, Vollick was under the influence of alcohol. Another eyewitness testified that Vollick was smoking a cigarette in the middle of a gasoline spill and even attempted to throw the cigarette on the ground, and that, based on this behavior, he believed Vollick was under the influence of alcohol.

During a pre-trial hearing, Vollick stipulated that the two prior DWI convictions and the two prior felony convictions were true. Defense counsel requested that the venire panel be advised that the minimum punishment was twenty-five years without instructing

them on Vollick's habitual felony offender status.  *See id.*  However, the trial court denied the request and instead instructed the panel that the charged offense is a third-degree felony which carries a range of punishment of two to ten years' confinement.  *See id.* § 12.34(a) (West, Westlaw through Ch. 46, 2015 R.S.).  The court also instructed the jury that if it found one prior felony conviction, then the range of punishment is two to twenty years, and if it found two prior felony convictions, then the range of punishment is twenty-five years to life.  *See id.* § 12.42.

Joseph Rivas, a Port Aransas police officer, testified that he found a twelve-ounce beer bottle in the back of Vollick's car that was cold and still contained some liquid.  According to Rivas, he then asked Vollick if he had consumed any alcohol and Vollick admitted to drinking four or five twelve-ounce beers.  Rivas testified that Vollick's eyes were bloodshot, his speech was slurred, he exhibited a disorganized thought process, and he had trouble retrieving his driver's license.  Vollick was swaying, failed to follow directions, and failed to complete the walk-and-turn field sobriety test successfully.  Rivas, as well as another officer present at the scene, each testified that they believed Vollick was intoxicated based on his movements, his appearance, his speech, and the way he smelled.

Rivas also testified that he had specialized training in intoxication detection and in standard field sobriety tests, including a certification in the horizontal gaze nystagmus ("HGN") test.  According to the officer, Vollick exhibited all of the indicators of alcohol consumption or some other central nervous system depressant.  Rivas also testified that Vollick's driver's license did not list any restrictions, and that Vollick was not wearing glasses or contact lenses at the time of the accident.  During opening statements, defense

counsel mentioned that Vollick suffered from many medical issues, including glaucoma, and indicated that these conditions were relevant to his inability to pass the field sobriety test. However, during cross-examination, Rivas testified that appellant never mentioned that he suffered from glaucoma. Rivas further testified that neither his training manual nor the National Highway Traffic Safety Administration manual listed glaucoma as one of the conditions that could potentially cause HGN. The other officer on the scene, Brett Boyer, testified that he was certified in standardized field sobriety testing, and that he was also not aware that glaucoma could affect the HGN test.

The night before the final day of trial, a local television station, KIII, ran a story on Vollick's case in which the reporter referred to the fact that Vollick had previously "been in court on DWI charges at least seven times." The news broadcast also showed portions of an interview with the Nueces County District Attorney, during which the District Attorney discussed other habitual-offender felony DWI defendants. The morning following the broadcast, defense counsel introduced the video and requested a mistrial for prosecutorial misconduct. The trial court tabled the issue to revisit later in the trial, stating that the "only reason that would be important is if indeed the jury heard those comments, and I've instructed the jury not to listen to those comments . . . . It doesn't impact my case, unless those jurors have been impacted." Later, after both parties rested, the trial court reviewed a recording of the news report. At this point, defense counsel noted that the jury pool contained a KIII employee and an editor of the Corpus Christi *Caller Times*, and he requested permission to ask these two jurors if they had seen the news report. Counsel later requested permission to "ask the jurors if they have seen the footage." The trial denied the request and the motion for mistrial.

4

During closing argument, defense counsel focused on the fact that Vollick was not wearing glasses at the time of the accident, and that he had mental and physical problems that might have interfered with the field sobriety tests. The State noted that the defense did not call any experts to the stand to connect Vollick's mental and physical issues to his intoxication. The jury convicted Vollick of felony DWI and sentenced him to seventy years' imprisonment in Texas Department of Criminal Justice.

Vollick then filed a motion for new trial and arrest of judgment, complaining that the State had misled the jury about the non-alcohol-related causes of HGN and had led the jury to believe that Vollick did not have any problems with his vision. At a hearing on the motion for new trial, Vollick did not call any witnesses to explain his eye conditions or the side effects of his medication. The motion for new trial also alleged a violation of Vollick's right to a fair trial in light of the KIII news report; however, no witnesses were called regarding this issue at the new trial hearing. At that hearing, Vollick called only his trial counsel to the stand to testify that he was unable to find anyone to testify at trial whether glaucoma affected the HGN test. The trial court denied the motion for new trial, and this appeal followed.

## II. DISCUSSION

### A. Motion for Mistrial

By his first issue, Vollick contends that the trial court abused its discretion by denying his motion for mistrial based on the KIII television news report. In his argument regarding this issue, Vollick emphasizes that the District Attorney violated the Texas Disciplinary Rules of Professional Conduct by giving a statement to the media regarding

5

Vollick's case during trial.[1]  He argues that the District Attorney's comments regarding his criminal record violated his Sixth Amendment right to a fair trial and amounted to prosecutorial misconduct, warranting a mistrial.  The State counters by noting that the District Attorney did not explicitly refer to Vollick by name in the news report, and it argues that Vollick did not show that he suffered any harm as a result of the report.

A mistrial is an appropriate remedy only in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors.  *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).  A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.  *Id.*  Whether an error requires a mistrial must be determined by the particular facts of the case.  *Id.*  A trial court's denial of a mistrial is reviewed for an abuse of discretion.  *Id.*  We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling.  *Id.*  The ruling must be upheld if it was within the zone of reasonable disagreement.  *Id.*

Even assuming, but not deciding, that the District Attorney's comments constituted a violation of ethical rules, we find no abuse of discretion by the trial court in denying

---

[1] In particular, rule 3.07 of the Texas Disciplinary Rules of Professional Conduct states as follows:

    (a)   In the course of representing a client, a lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding.  A lawyer shall not counsel or assist another person to make such a statement.

    (b)   A lawyer ordinarily will violate paragraph (a), and the likelihood of a violation increases if the adjudication is ongoing or imminent, by making an extrajudicial statement of the type referred to in that paragraph when the statement refers to:

        (1)   the character, credibility, reputation or criminal record of a party . . . .

TEX. DISCIPLINARY R. PROF'L CONDUCT 3.07, *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app. A (West, Westlaw through Ch. 46, 2015 R.S.).

6

Vollick's motion for mistrial. The Texas Court of Criminal Appeals has held that the rules of professional conduct "should not be used as a tactical weapon to . . . obtain a reversal of a conviction for alleged disciplinary rule violations by opposing counsel" unless "the defendant can show the alleged disciplinary rule violations by opposing counsel deprived him of a fair trial or otherwise affected his substantial rights." *House v. State*, 947 S.W.2d 251, 253 (Tex. Crim. App. 1997); *see Powers v. State*, 165 S.W.3d 357, 359 (Tex. Crim. App. 2005). "[I]f a defendant cannot show actual prejudice from an alleged disciplinary rule violation by the State, then he will not be entitled to relief on appeal." *House*, 947 S.W.2d at 253.

> Here, prior to trial, the trial court instructed the jury as follows:

> The media is an outside influence and we are trying to shelter you, isolate you from all those influences so that you can render your verdict based upon what happens in this courtroom. So, please do not read anything in the print media, Caller.com, or actually the newspaper. And please do not stay in the same room if a radio and/or the T.V. is discussing this case; use the remote, close it, etc. Remember, you will very rarely see a member of the media in the courtroom listening to the facts as you are hearing them. No one has heard these facts. So the bottom line is everything they are stating is all hearsay, based upon, you know, whatever they are drawing upon. But the key thing is, is your verdict has to be based here and not be influenced by the media, so that is the media instruction.

And, the guilt-innocence jury charge contained the following instruction:

> With respect to the evidence admitted in this case concerning the defendant's having been previously convicted two times of being intoxicated while operating a motor vehicle in a public place, you are instructed that such evidence cannot be considered by you in any manner as proving or tending to prove that the defendant was intoxicated while driving or operating a motor vehicle in a public place on or about DECEMBER 26, 2013.

The guilt-innocence charge also advised the jury that Vollick "has stipulated to having been previously convicted two or more times of an offense relating to the operating of a motor vehicle while intoxicated."

"We generally presume the jury follows the trial court's instructions in the manner presented." *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Here, there is no evidence in the record establishing that any juror disobeyed the trial court's explicit instructions regarding media coverage or its limiting instruction regarding the two stipulated prior DWI offenses.[2] Therefore, we cannot say that Vollick suffered any "actual prejudice" as a result of the District Attorney's comments in the KIII news report, *see House*, 947 S.W.2d at 253, nor can we say that the trial court abused its discretion in denying a mistrial. Vollick's first issue is overruled.

### B.    Rule 606(b) Questions

By his second issue, Vollick contends that the trial court erred in disallowing his trial counsel from asking jurors as to whether they had seen the televised news report.

Under Texas Rule of Evidence 606, a juror may not testify as a witness before the other jurors at trial. TEX. R. EVID. 606(a). During an inquiry as to the validity of a verdict or indictment, however, a juror may testify "about whether an outside influence was improperly brought to bear on any juror." TEX. R. EVID. 606(b)(2)(A). In *Mays v. State*, the Texas Court of Criminal Appeals applied an abuse-of-discretion standard in reviewing the trial court's denial of defense counsel's request to poll the jury as to "whether they had been exposed to or affected by media coverage of the case." 318 S.W.3d 368, 377 (Tex. Crim. App. 2010). That case involved an editorial article that had appeared in a local newspaper the day before trial allegedly suggesting "that law enforcement was watching what happened in this trial." *Id.* The Court held that the trial court did not abuse

---

[2] We note that Vollick did not call any witnesses to testify regarding this issue at the motion for new trial hearing.

8

its discretion in refusing counsel's request, noting that "[t]he trial court repeatedly instructed the jury panel, the individual jurors selected, and the empaneled jury not to read, watch, or listen to any media stories about the case." *Id.* at 378. The Court further noted that, had the trial court granted counsel's request, it would have risked exposing the jury to the existence and contents of the editorial for the first time. *Id.* at 377–78. The Court reached an identical conclusion in *Powell v. State*, which involved a newspaper article that allegedly inaccurately recounted testimony from a hearing on the admissibility of DNA evidence. 898 S.W.2d 821, 828 (Tex. Crim. App. 1994). There, the Court held:

> In the instant case, the trial court was faced with a decision: it could either deny appellant's request for a jury poll concerning the contents of the . . . article, or it could grant appellant's request, poll the jury, and risk exposing the jury to the existence of the article and its contents for the first time. We believe the trial court decided correctly. By refusing to poll the jury about the . . . article, and by reiterating its admonishments, the trial court did its best, under the circumstances, to preserve the integrity of the jury panel.

*Id.*

We believe that *Mays* and *Powell* are analogous to the instant case. As in those cases, the trial court here advised the jurors that they were not to listen to or watch media reports about the case. By refusing to poll the jury about the KIII news report, the trial court avoided the risk of exposing the jury to the existence and content of the report for the first time, thereby helping to "preserve the integrity" of the panel. *See id.* Following *Mays* and *Powell*, we conclude that the trial court did not abuse its discretion in denying defense counsel's request to poll the jury, and we overrule Vollick's second issue.

## C.     Voir Dire Questions Regarding Punishment Range

By his third issue, Vollick contends that the trial court abused its discretion by refusing to allow his counsel to question the venire panel regarding the minimum

9

punishment applicable to his offense. Vollick contends that, due to his stipulations regarding his prior offenses, the minimum punishment applicable in his case was set by the habitual-felony-offender statute at twenty-five years' imprisonment, rather than two years as provided by statute generally for a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 12.34(a), 12.42(d).

> Both the State and defense are entitled to jurors who can consider the entire range of punishment for the particular statutory offense—i.e., from the maximum to the minimum and all points in between. Jurors must be able to consider both a situation in which the minimum penalty would be appropriate and . . . a situation in which the maximum penalty would be appropriate. Therefore, both sides may question the panel on the range of punishment and may commit jurors to consider the entire range of punishment for the statutory offense. A question committing a juror to consider the minimum punishment is both proper and permissible.

*Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010) (footnotes and internal quotations omitted).

We find no error in the record related to Vollick's third issue. The trial court denied defense counsel's request to instruct the jury that the minimum punishment upon conviction was twenty-five years, but Vollick directs us to no point in the record where the trial court disallowed him from asking the individual veniremembers whether they would be willing to consider twenty-five years as an appropriate punishment in the case. In fact, the prosecutor questioned the panel as to whether they believed twenty-five years was too harsh a punishment for the offense at issue. Finally, as the State notes, Vollick could have withdrawn his stipulation prior to sentencing and the trial court could have conceivably set aside the stipulation. *See Brito v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005) ("A trial court has discretion to set aside a stipulation."). Therefore, it would have been improper for the trial court to have instructed the venire panel that, because

10

Vollick stipulated to his prior offenses, the minimum punishment would be the prison term set in the habitual-felony-offender statute. We overrule Vollick's third issue.

## D. Motion for New Trial

Vollick argues by his fourth issue that the trial court abused its discretion by denying his motion for new trial. He contends that he was entitled to a new trial because "the State argued and allowed, without correction, [m]isleading evidence [r]egarding [Vollick's] [v]ision, the [c]auses of HGN, and [h]is [m]edical [c]ondition." We review a denial of a motion for new trial for abuse of discretion. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014).

"The Due Process Cause of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly." *Ex parte Chavez*, 371 S.W.3d 200, 207–08 (Tex. Crim. App. 2012) (citing *Ex parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011)); *see* U.S. CONST. amend. XIV. Testimony need not be perjured to constitute a due process violation; rather, "it is sufficient that the testimony was 'false.'" *Id.* "The question is whether the testimony, taken as a whole, gives the jury a false impression." *Id.*

Vollick argues that the State provided "misleading evidence regarding his vision, knowing he truly had vision issues." He first notes that, even though there were medical records in evidence establishing that he had been prescribed medication for glaucoma, the State nevertheless elicited testimony from Rivas that Vollick's driver's license had no listed restrictions such as required eyeglasses. Second, Vollick argues that the State elicited testimony from Rivas and Boyer that glaucoma does not affect the HGN test, and he asks us to take judicial notice that glaucoma may, in fact, bring about HGN. *See*

11

*Schultz v. State*, 664 A.2d 60, 77 (Md. Ct. Spec. App. 1995) (listing glaucoma among 38 "possible cause[s] of nystagmus"); *State v. Witte*, 836 P.2d 1110, 1120 (Kan. 1992) (noting that "conditions such as . . . glaucoma . . . may result in gaze nystagmus").

First, with respect to the driver's license restrictions, Rivas never gave any false or misleading testimony. It is undisputed that Vollick's driver's license contains, as Rivas stated, no restrictions. Vollick argues that this testimony was "misleading" in light of medical records that showed he was diagnosed with glaucoma, but we disagree. At most, this was a conflict in the evidence which the jury, as finder of fact, was entitled to resolve. *See, e.g., Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Second, with respect to the testimony regarding the effect of glaucoma on the HGN test, the State points out that, even if we were to take judicial notice that glaucoma may cause nystagmus, that does not mean that glaucoma would necessarily cause a person to fail the HGN test. The State directs us to *People v. McKown*, in which the Illinois Supreme Court observed:

> Nystagmus is "an involuntary, rapid, rhythmic movement of the eyeball, which may be horizontal, vertical, rotary, or mixed, i.e., of two varieties." The medical dictionary lists 45 types of nystagmus. For example, ataxic nystagmus is unilateral and occurs in individuals with multiple sclerosis. Congenital nystagmus "may be caused by or associated with optic atrophy, coloboma, albinism, bilateral macular lesions, congenital cataract, severe astigmatism, and glaucoma." Gaze nystagmus, which is at issue in the present case, is "made apparent by looking to the right or to the left," as opposed to fixation nystagmus, "which appears only on gazing fixedly at an object," or latent nystagmus, "which occurs only when one eye is covered."

924 N.E.2d 941, 945 (Ill. 2010) (citations to medical dictionaries omitted); *see* IDA G. DOX, ET AL., ATTORNEY'S ILLUSTRATED MEDICAL DICTIONARY N48 (West 1997) (defining "nystagmus" as "[i]nvoluntary movements of the eyeballs in either a rotary, horizontal, or vertical direction; most commonly it is a rhythmic jerking with a fast and slow component,

12

and is described by the direction of the quick component"). There are multiple forms of nystagmus, and while there may be some support for the proposition that glaucoma may bring about nystagmus, we are aware of no authority indicating that glaucoma may cause the particular type of nystagmus that is a sign of intoxication in the HGN test.[3] Accordingly, we do not believe that the officers' testimony, in which they stated that they were not aware that glaucoma could cause HGN, gave the jury a "false impression" so as to violate Vollick's right to due process under the Fourteenth Amendment. *See Ex parte Chavez*, 371 S.W.3d at 208.

Even if we were to determine that the officers' testimony regarding the potential of glaucoma to cause HGN gave a false impression to the jury, Vollick has not demonstrated that he suffered harm from the admission of the testimony. To constitute a due-process violation, the record must show that the allegedly false testimony was material—that is, the record must show "'a reasonable likelihood' that the false testimony affected the judgment of the jury." *Id.* (citing *Ex parte Ghahremani*, 332 S.W.3d at 470, 478 (Tex. Crim. App. 2011)). Here, the record contains overwhelming evidence that Vollick operated a vehicle while intoxicated on December 26, 2013. Eyewitness testimony established that Vollick hit two signs with his vehicle that night, that his facial expression and eyes were "droopy," that his speech was slurred, and that he was smoking a cigarette in the presence of spilled gasoline. Rivas testified that there was an open beer bottle in

---

[3] Vollick cites *Mata v. State*, in which a dissenting justice of the San Antonio Court of Appeals noted that "[t]here is evidence that . . . glaucoma may bring about HGN." 13 S.W.3d 1, 15 (Tex. App.—San Antonio 1999) (Cadena, Retired C.J., dissenting), *rev'd on other grounds*, 46 S.W.3d 902, 917 (Tex. Crim. App. 2001). The only authority cited in *Mata* for this proposition, however, is *Emerson v. State*, in which the Texas Court of Criminal Appeals took judicial notice "of the reliability of both the theory underlying the HGN test and its technique." 880 S.W.2d 759, 769 (Tex. Crim. App. 1994) (en banc). The *Emerson* Court did not mention glaucoma or its potential effect on the HGN test. Therefore, we do not consider *Mata* to be authority indicating that glaucoma may cause a person to fail the HGN test.

13

Vollick's car, that Vollick admitted to having several drinks, and that he failed the walk-and-turn test. Both officers testified that, based on Vollick's behavior and odor, they believed he was under the influence of alcohol. Vollick's glaucoma may or may not have contributed to his failing the HGN test, but it does not explain any of these other incriminating facts. Accordingly, even without the allegedly false testimony, the jury was overwhelmingly likely to have found Vollick guilty of the charged offense. There is no "reasonable likelihood" that the testimony affected the judgment of the jury. *See id.*

We conclude that the trial court did not abuse its discretion in denying the motion for new trial. Vollick's fourth issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of July, 2015.

14