

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00218-CR

Runcie Kiran **DOOKERAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR8069
Honorable Melisa C. Skinner, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:       Irene Rios, Justice
               Beth Watkins, Justice
               Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: August 23, 2023

AFFIRMED

Appellant Runcie Kiran Dookeran challenges his conviction on two counts of indecency

with a child. We affirm.

### BACKGROUND

Sometime in the late night of September 25 or the early morning of September 26, 2018,

Dookeran's then-9-year-old stepdaughter, I.G., and her younger brother went to sleep in the bed

---

[1] The Honorable Sandee Bryan Marion, Chief Justice (Ret.) of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.

shared by Dookeran and the children's mother, C.D.[2] The children slept between the couple, with I.G. next to Dookeran and her brother next to C.D. At trial, C.D. testified that this sleeping arrangement was not uncommon in their household.

On the morning of September 26, I.G. told C.D. that Dookeran "put his penis in [her] butt hole" during the night. I.G. also told C.D. that Dookeran "had previously touched her vagina while she slept." Later that day, I.G. was examined by a Sexual Assault Nurse Examiner (SANE). During the SANE exam, I.G. reported both the anal penetration she claimed had happened the night before and "hand [to] genital contact over the previous month." Evidence collected during the SANE exam showed the presence of Dookeran's DNA on I.G.'s anus. Dookeran was subsequently arrested and indicted on four counts: penetrating I.G.'s vagina with his finger on or about September 5, 2018 (count 1); engaging in sexual contact with I.G. by touching part of her genitals on or about September 5, 2018 (count 2); penetrating I.G.'s anus with his penis on or about September 26, 2018 (count 3); and engaging in sexual contact with I.G. by touching part of her genitals on or about September 26, 2018 (count 4).

At trial, the jury heard testimony from:

- I.G., who was then 12 years old;

- C.D.;

- three law enforcement officers who collected evidence in this case;

- Myriam Sandoval, who conducted a forensic interview with I.G.;

- Edward Russell, who conducted I.G.'s SANE exam;

- Shannon Murphy, who conducted a SANE exam on Dookeran;

- Wesli Stubbs and Catherine Haskins-Miller, the forensic scientists who examined the biological and DNA evidence in this case; and

---

[2] To protect the privacy of the minor child, we refer to the child and her mother by their initials.

- Monte Miller, Ph.D., a defense expert who testified about person-to-person, person-to-surface, and surface-to-person transfer of DNA.

I.G. testified that the vaginal penetration alleged in count 1 did not occur, and the trial court instructed the jury to render a verdict of not guilty on that count. The jury then found Dookeran guilty of counts 2 and 4 and not guilty of count 3. For each guilty verdict, the jury assessed punishment of twenty years' confinement and a $10,000 fine. The trial court ordered the sentences to run consecutively. Dookeran now appeals.

## ANALYSIS

### *False Testimony*

In his first issue, Dookeran argues his conviction violated his right to due process because I.G. presented false testimony and the remaining evidence presented at trial "was directly reliant on [I.G.]'s false testimony."

#### *Standard of Review and Applicable Law*

The Texas Court of Criminal Appeals "has recognized that the use of material false evidence to procure a conviction violates a defendant's due-process rights under the Fifth and Fourteenth amendments to the United States Constitution" even if the State was not aware of the falsity of the evidence. *Ex parte De La Cruz*, 466 S.W.3d 855, 866 (Tex. Crim. App. 2015). "[T]he relevant question is whether the testimony, taken as a whole, gives the jury a false impression." *Id.*; *Ex parte Chaney*, 563 S.W.3d 239, 263 (Tex. Crim. App. 2018).

"It is axiomatic that a due process claim based on false evidence requires the defendant to prove first and foremost that the evidence was actually false." *Ukwuachu v. State*, 613 S.W.3d 149, 150 (Tex. Crim. App. 2020). To meet this burden, a defendant must identify "some credible evidence that clearly undermines the evidence adduced at trial[.]" *Id.* at 156. The evidence of falsity must be "definitive or highly persuasive[.]" *Id.* at 157. If the defendant successfully

establishes that false evidence was presented at his trial, he must also show the false evidence was material to his conviction. *Ex parte De La Cruz*, 466 S.W.3d at 866. "[A] false statement is material only if there is a reasonable likelihood that the false testimony affected the judgment of the jury." *Ex parte Weinstein*, 421 S.W.3d 656, 665 (Tex. Crim. App. 2014).

In considering a false evidence claim, we must avoid "circumvent[ing] the jury's role in assessing the credibility of witness testimony and resolving the inconsistencies in the evidence presented at trial." *Ex parte De La Cruz*, 466 S.W.3d at 867. Where the defendant's claims of falsity are based on inconsistencies or conflicts in the evidence presented to the jury, a reviewing court "owes deference to the jury's determination with respect to the weight and credibility of the evidence that was presented at trial." *Id.* at 870–71.

*Application*

Dookeran first argues that I.G.'s testimony that he penetrated her anus with his penis was false. He notes that because the jury acquitted him on count 3, it appears to have disbelieved I.G.'s testimony on this point. But even if I.G.'s testimony on this issue was false, we cannot say it was material to Dookeran's conviction on counts 2 and 4. *See Ex parte Weinstein*, 421 S.W.3d at 665. The jury could have believed I.G.'s testimony that Dookeran committed the hand-to-genital contact alleged in counts 2 and 4 even if it disbelieved her testimony that he penetrated her anus with his penis. *See id.*; *see also Ex parte De La Cruz*, 466 S.W.3d at 871 (purportedly false testimony was not material because jury could have convicted defendant even if it disbelieved the testimony at issue). Accordingly, we may not reverse the judgment on this basis.

Dookeran also identifies several alleged inconsistencies and contradictions in I.G.'s trial testimony about when Dookeran first inappropriately touched her, her sensory impressions of those contacts, and when she reported those contacts to others. As support for the proposition that these inconsistencies show I.G.'s testimony as a whole was false, Dookeran cites cases where:

- mental health records presented post-trial showed a key witness lied about suffering from hallucinations, *Ex parte Weinstein*, 421 S.W.3d at 666;

- an expert witness "knew at the time of trial that the body of science did not support" his testimony regarding the odds that the defendant was the source of a bite mark found on a murder victim, *Ex parte Chaney*, 563 S.W.3d at 263–64;

- a third party's confession to a shooting showed that trial testimony identifying the defendant as the shooter was false, *Ex parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2012);

- a defendant learned post-trial that the State failed to disclose evidence that contradicted significant trial testimony, *Ex parte Ghahremani*, 332 S.W.3d 470, 479–80 (Tex. Crim. App. 2011); and

- undisputed documentary evidence showed, and the State conceded on appeal, that testimony offered at trial was factually incorrect, *Estrada v. State*, 313 S.W.3d 274, 286–88 (Tex. Crim. App. 2010).

Dookeran's cited authority is distinguishable from these facts. Unlike the cases cited above, this case does not involve extrinsic evidence that casts doubt on I.G.'s testimony; instead, Dookeran merely argues that her testimony was internally inconsistent. But Dookeran was aware of the purported inconsistencies at the time of trial, and he highlighted them during his cross-examination and closing argument. *See Ex parte De La Cruz*, 466 S.W.3d at 869–70 (rejecting a false evidence claim because "the conflicting evidence . . . was largely before the jury that already reconciled any inconsistencies against" the defendant); *see also Coronado v. State*, 351 S.W.3d 315, 323 (Tex. Crim. App. 2011) (describing cross-examination as "the principal means by which the believability of a witness and the truth of his testimony are tested") (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). Additionally, the forensic examiner, Sandoval, told the jury that "it's very normal" for details to be left out or changed "when it comes to talking to children."

After hearing evidence and argument from both sides, the jury resolved some of the purported conflicts in I.G.'s testimony in favor of acquittal on count 3 and others in favor of conviction on counts 2 and 4. *See Ex parte De La Cruz*, 466 S.W.3d at 869–71. Under the proper

standard of review, we may not substitute our "own judgment for that of the jury that reviewed substantially the same pertinent evidence." *Id.* at 871.

Dookeran also argues that I.G. "admitt[ed] that her testimony was a lie," and he appears to contend that this purported admission requires us to conclude he was convicted based on false testimony. This assertion refers to the following exchange at trial:

| | |
|---|---|
| Defense counsel: | You just told this jury that Runcie had been touching you for a year. You never said that to anybody in this case, have you? |
| I.G.: | No. |
| Defense counsel: | You watched a video this morning, didn't you?[3] |
| I.G.: | Yes. |
| Defense counsel: | And it's 58 minutes, right? |
| I.G.: | Yes. |
| Defense counsel: | And you never in that video said that your father at the time had been touching you sexually inappropriately for a year. You never said that, did you? |
| I.G.: | I didn't say for that long. I think I said for a few months. |
| Defense counsel: | Okay. For a few months? |
| I.G.: | Yes. |
| Defense counsel: | But you just told these people over here that it had been happening for a year. Do you see the difference? That's a lie, isn't it? . . . Do you remember the Judge asked you about knowing the difference between telling the truth and telling a lie. It's a lie that he had been touching you for a year; isn't it? |
| I.G.: | Yes. |

---

[3] The record shows the video referenced in this exchange was used to refresh I.G.'s memory outside the presence of the jury. The video was not admitted into evidence, shown to the jury, or transcribed into the appellate record. However, Dookeran's trial counsel agreed on the record that it was "fine" for I.G. to "refresh her memory from the video[.]"

Defense counsel:      Then why would you tell these people that?

I.G.:              I guess I didn't remember.

As with the purported inconsistencies discussed above, the jury heard this exchange, and it resolved any conflicts it raised in favor of conviction on counts 2 and 4. *See id.* Dookeran cites no authority that would permit us to reject the jury's evaluation of I.G.'s credibility, and we have found none. *See id.*; *cf. Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

After reviewing I.G.'s testimony as a whole, we conclude the purported inconsistencies Dookeran identifies do not rise to the level of "definitive or highly persuasive evidence" that her testimony left the jury with a misleading or false impression. *Ukwuachu*, 613 S.W.3d at 156–57; *Ex parte De La Cruz*, 466 S.W.3d at 866. Dookeran's position that his conviction was based on false testimony essentially asks us to hold that because the jury apparently disbelieved some of I.G.'s testimony, it was required to disbelieve all of it. We decline to so hold.

We overrule Dookeran's first issue.

### Dookeran's Second Issue

In his second issue, Dookeran argues: (1) the trial court should have instructed the jury to render a verdict of not guilty on count 2; (2) the evidence was insufficient to support his conviction on count 4; (3) the jury charge caused him "egregious harm"; and (4) his conviction on counts 2 and 4 violated his right against double jeopardy. Because this issue raises multiple legal theories, it is multifarious and therefore arguably presents nothing for our review. *See Balderas v. State*, 517 S.W.3d 756, 780 (Tex. Crim. App. 2016). However, in the interest of justice, we will address the arguments as we understand them. *See id.*

### Sufficiency of the Evidence

As noted above, the trial court instructed the jury to find Dookeran not guilty on count 1 of the indictment. Dookeran argues the trial court erred by not including count 2 in that instruction.

He also argues the evidence was legally insufficient to support his conviction on count 4. Because both complaints attack the sufficiency of the evidence to support Dookeran's conviction, we address them together. *See Youens v. State*, 988 S.W.2d 404, 407 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("A complaint about the denial of an instructed verdict is reviewed as an attack on the sufficiency of the evidence.").

Standard of Review and Applicable Law

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). "[N]o evidence is ignored because the standard requires a reviewing court to view all of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016) (internal quotation marks and emphasis omitted). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett*, 552 S.W.3d at 262. Rather, "[a] court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*. "The testimony of a victim standing alone, even when the victim is a child, is sufficient to support a conviction for sexual assault." *Ruiz v. State*, 891 S.W.2d 302, 304 (Tex. App.—San Antonio 1994, pet. ref'd).

Counts 2 and 4 both charged Dookeran with the offense of indecency with a child. As worded in the indictment and the court's charge, the two counts were identical but for the date of the offense. A person commits indecency with a child if he "engages in sexual contact with the child or causes the child to engage in sexual contact[.]" TEX. PENAL CODE ANN. § 21.11(a)(1). For

the purposes of section 21.11, "sexual contact" includes "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" "with the intent to arouse or gratify the sexual desire of any person[.]" TEX. PENAL CODE ANN. § 21.11(c)(1).

Where, as here, the State alleges an offense occurred "on or about" a certain date, it is required only to show that the alleged conduct occurred before "the presentment of the indictment and within the statutory limitation period." *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); TEX. CODE CRIM. PROC. ANN. art. 21.02(6). The indictment in this case was presented in July of 2019, and there is no statutory limitation period for the offense of indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(E).

<u>Application</u>

Count 2 asked the jury to determine whether Dookeran "touch[ed] part of the genitals of [I.G.] with the intent to arouse or gratify the sexual desire of any person" on or about September 5, 2018. I.G. testified that Dookeran touched her vagina under her clothes "[a] lot" on "[m]any days" while he lay next to her at night. She also testified that the touching went on "for a few months" prior to September of 2018. She told the jury that she "kind of got used to it" and "thought it was normal . . . [b]ecause it happened almost every day." Both C.D. and Russell testified that I.G. had made similar statements to them. This evidence, when viewed in the light most favorable to the judgment, would permit a rational jury to find the essential elements of count 2 beyond a reasonable doubt. *See Ruiz*, 891 S.W.2d at 304; *see also Nowlin*, 473 S.W.3d at 317; TEX. PENAL CODE § 21.11.

Count 4 asked the jury to determine whether Dookeran "touch[ed] part of the genitals of [I.G.] with the intent to arouse or gratify the sexual desire of any person" on or about September 26, 2018. I.G. testified that on that date, Dookeran "poked his thumb in the middle of [her] vagina and [her] butt hole" and "rubbed [his thumb] in the middle of [her] vagina and [her] butt hole."

She also testified that she heard Dookeran "licking his thumb" before he touched her between her anus and vagina. While I.G.'s testimony alone was sufficient to support a conviction, *Ruiz*, 891 S.W.2d at 304, her testimony that Dookeran licked his thumb before he touched her was corroborated by scientific evidence. Stubbs told the jury that her testing revealed "a presumptive chemical test for the possible presence of saliva that was positive on anal swabs" from I.G.'s SANE exam, and Haskins-Miller testified that Dookeran could not be excluded "as a potential donor of" DNA found on the anal swabs. Haskins-Miller further testified that while she could not say with 100% certainty that the DNA on the anal swabs belonged to Dookeran, the "probability of selecting that genetic profile that [she] found on the evidence from a random population of unrelated individuals" was "one in 2,835,300,000,000,000,000,000." Although Dookeran's own expert offered potential non-criminal explanations for the DNA found on the anal swabs, he also told the jury that the evidence showed "[s]omething that was a good source of Runcie Dookeran's DNA came into direct contact with [I.G.'s] anal area." Based on this evidence, a rational jury could have found the required elements of count 4 beyond a reasonable doubt. *See id.*; *see also Nowlin*, 473 S.W.3d at 317; TEX. PENAL CODE § 21.11.

We overrule Dookeran's challenge to the sufficiency of the evidence.

### *Double Jeopardy*

Next, Dookeran argues that "by including the language 'on or about' [the court's charge] allowed the jury to convict and punish [Dookeran] twice for the same offense, in violation of his 5th Amendment rights." *See Speights v. State*, 464 S.W.3d 719, 722 (Tex. Crim. App. 2015) ("The constitutional proscription against double jeopardy provides . . . protection against multiple punishments for the same offense."). He appears to contend that the offenses alleged in counts 2 and 4 "are based on the same unit of prosecution" and he therefore cannot be punished for both. *See Ex parte Castillo*, 469 S.W.3d 165, 169 (Tex. Crim. App. 2015).

We disagree. "[T]he allowable unit of prosecution for indecency with a child is sexual contact," and separate acts of contact are distinct offenses. *Hernandez v. State*, 631 S.W.3d 120, 124 (Tex. Crim. App. 2021); *Maldonado v. State*, 461 S.W.3d 144, 149–50 (Tex. Crim. App. 2015). "[T]he commission of each prohibited act determines how many convictions may be had for a particular course of conduct[.]" *Loving v. State*, 401 S.W.3d 642, 649 (Tex. Crim. App. 2013). Here, count 4 asked the jury to determine whether Dookeran committed the hand-to-genital contact that I.G. claimed occurred on September 26, 2018, while count 2 asked the jury to determine whether he committed the hand-to-genital contact that I.G. claimed happened prior to that date. I.G. testified that Dookeran "poked his thumb in the middle of [her] vagina and [her] butt hole" on September 26, 2018 *and* that he had touched her vagina with his hand on multiple occasions prior to that date. While Dookeran argues, as he did in his first issue, that I.G.'s testimony on this point was inconsistent, we are required to defer to the jury's resolution of those purported inconsistencies. *See, e.g.*, *Nisbett*, 552 S.W.3d at 262.

The allegations in the indictment and the evidence presented at trial involved at least two distinct acts of sexual contact. *See, e.g.*, *Maldonado*, 461 S.W.3d at 149–50. Because the record therefore shows Dookeran was convicted of two separate units of prosecution, his "double jeopardy right to avoid being punished twice for the same offense is not offended." *Speights*, 464 S.W.3d at 724; *Maldonado*, 461 S.W.3d at 150.

We overrule Dookeran's double jeopardy complaint.

### Charge Error

Dookeran also argues that error in the court's charge subjected him to egregious harm. However, he does not identify any specific error in the charge that was distinct from his false-evidence, sufficiency, and double jeopardy complaints. Because we have rejected these complaints, we conclude he has not established error in the charge. *See, e.g.*, *Ngo v. State*, 175

S.W.3d 738, 743 (Tex. Crim. App. 2005) ("Our first duty in analyzing a jury-charge issue is to decide whether error exists.").

We overrule Dookeran's second issue.

### *Admission of SANE Report*

In his third issue, Dookeran challenges the trial court's admission of medical records from I.G.'s SANE exam. Dookeran did not object to the admission of the SANE records at trial. *See* TEX. R. EVID. 103(a). To the contrary, he expressly stipulated to their admissibility in writing. Because "the law of invited error estops a party from making an appellate error of an action it induced," we overrule Dookeran's third issue. *See Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999).[4]

### *Cumulation of Sentences*

In his fourth issue, Dookeran challenges the trial court's decision to cumulate the two twenty-year sentences of confinement assessed by the jury. "Normally, the trial judge has absolute discretion to cumulate sentences, so long as the law authorizes the imposition of cumulative sentences." *Byrd v. State*, 499 S.W.3d 443, 446 (Tex. Crim. App. 2016) (internal quotation marks omitted). "[W]hen a trial judge lawfully exercises the option to cumulate, that decision is unassailable on appeal." *Beedy v. State*, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008).

Dookeran does not argue that cumulation was not permitted here. Instead, he contends the trial court's ruling violated his Sixth Amendment right to counsel because the court granted the State's motion to cumulate without seeking input from Dookeran's attorney. While Dookeran cites authority generally outlining the Sixth Amendment right to counsel, he cites no authority holding

---

[4] Even if Dookeran had properly objected to the admission of the SANE records, his only complaint about the admission of those records is that they "contained [I.G.'s] false testimony." As explained above, Dookeran has not met his burden to establish that I.G. presented false testimony.

that the Sixth Amendment requires a trial court to affirmatively seek input from a defendant's attorney before exercising its discretion to cumulate sentences. *Cf. Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006) (rejecting defendant's complaint that trial court's cumulation of sentence violated his Sixth Amendment right to jury trial). We have found no such authority. "The Legislature has charged the trial court with the determination of whether to cumulate, and the trial court is free to make this determination so long as the individual sentences are not elevated beyond their respective statutory maximums." *Id.* at 382.

We overrule Dookeran's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH